Roy A. Katriel (SBN 265463)
THE KATRIEL LAW FIRM
4225 Executive Square, Suite 600
La Jolla, California 92037
Telephone: (858) 242-5642
Facsimile:  (858) 430-3719
e-mail: rak@katriellaw.com

*Counsel for Plaintiff Adrienne Moore*

# UNITED STATES DISTRICT COURT

# NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ADRIENNE MOORE, On Behalf of Herself and All Others Similarly Situated,<br><br>                    Plaintiff,<br><br>            v.<br><br>APPLE INC.<br><br>                    Defendant. | Case No._____<br><br>**CLASS ACTION COMPLAINT**<br><br>**Jury Trial Demanded** |

# NATURE OF THE ACTION

1. Plaintiff Adrienne Moore ("Moore" or "Plaintiff") hereby brings this action on behalf of herself and all other similarly situated persons within the United States who obtained wireless cellular service on an Apple iPhone or iPad device that was equipped with Apple's iMessage service, and subsequently replaced that device (on which they were obtaining their wireless cellular service) with a non-Apple device instead.   When Plaintiff and the putative class members subscribed to cellular service through these Apple iPhone or iPad devices, they had, as part of their cellular service contract and Apple device ownership, the ability to send and receive

text messages. To accomplish this task, these Apple device users employed an Apple service and application that were part of Apple's software operating system, and that are known respectively as iMessage and Messages. Unbeknownst to Plaintiff and the putative class members, however, once they switched from an Apple iPhone or iPad to a non-Apple device for their wireless service needs, Apple's iMessages and Message service and application still retained text messages that were directed at these persons from other Apple users, and failed to deliver these text messages to the putative class members as long as these putative class members continued using a non-Apple device. In this manner, Apple tortiously interfered with the contract for cellular service between these putative class members and their cellular telephone carrier in that Apple's actions prevented the subscribers from receiving all of their text messages, as they were entitled to obtain through their cellular wireless service contracts. Further, Apple failed to properly disclose to Plaintiff and the putative class members, at the time that they owned their Apple iPhone or iPad devices (or anytime thereafter) that, should they switch away from an Apple device to a non-Apple device, Apple's iMessage and Messages service and application would act to prevent these persons from receiving all their text messages on the non-Apple device that these class members used to replace their Apple iPhone or iPad devices. Through this material omission, Apple violated the California Legal Remedies Act. The foregoing conduct also amounts to a violation of California's Unfair Competition Law.

### INTRADISTRICT ASSIGNMENT

2. Pursuant to Local Civil Rules 3-2(e) and 3-5(c), Plaintiff maintains that Intradistrict Assignment of this action to the Court's San Jose Division is appropriate because "a substantial part of the events or omissions which give rise to the claim occurred" (Civil L.R. 3-2(c)) in Apple's Cupertino headquarters in Santa Clara County.

### JURISDICTION AND VENUE

3. This Court has subject-matter jurisdiction over this action pursuant to the Class Action Fairness Act, 28 U.S.C. § 1332(d) because Plaintiff's Class Action Complaint pleads a cause of action on behalf of a nationwide class whose members are of diverse citizenship than

Apple's California citizenship, and the amount in controversy, exclusive of interest and costs, exceeds $ 5 million.

4. Venue is proper in this judicial district because Apple is headquartered within this judicial district at 1 Infinite Loop in Cupertino, California 95014. Upon information and belief, the marketing and disclosure decisions about Apple's iMessage service were made from within Apple's headquarters. Venue in this judicial district is, therefore, proper pursuant to 28 U.S.C. §§ 1391(b)(1) and 1391(b)(2). Through its corporate and retail presence in California, as well as its significant sales of Apple devices within California (including the very devices at issue in this Class Action Complaint), Apple is also amenable to personal jurisdiction in this State and judicial district.

**PARTIES**

5. Plaintiff Adrienne Moore is a resident of California. For years pre-dating the filing of this action, Plaintiff was an owner of an iPhone 4 device and subscribed to Verizon Wireless for her cellular telephone needs. As part of her cellular service, she was entitled to obtain, *inter alia*, voice telephone calls and text messages in exchange for a monthly fee. Plaintiff's iPhone 4 device operated Apple's OS software operating system that included, a messenger service developed by Apple called iMessage. Within iMessage, a default Apple client application known as Messages exists that allows users to send and receive texts, documents, photos, videos, contact information, and group messages over Wi-Fi, 2G, 3G, or LTE networks to other Apple iOs or OS X users, thus providing an alternative to standard SMS/MMS text messaging for most users with devices running Apple's iOS 5 or later. During the time that Plaintiff was a Verizon Wireless subscriber for her Apple iPhone 4, Apple prompted her to update her Apple software operating system. As part of one of those updates, her iPhone 4 began using by default the iMessage service to route text messages from and to her through Apple's Messages application when those text messages involved other Apple device users that had the Apple iMessage service (i.e., all other Apple devices running Apple iOS 5 or later). Unbeknownst and undisclosed to Plaintiff, however, once she decided to replace her Apple iPhone 4 device with a Samsung Galaxy S5, as

Class Action Complaint                                                                 *Adrienne Moore v. Apple Inc.*,
                                                                                        No. _____
3

she did on or about April 16, 2014, Apple's iMessage service and Message application still acted so as to not deliver incoming text messages sent to her by Apple device users to her same cellular telephone number, but that was now associated with a non-Apple device (i.e., her Samsung S5 device). Put simply, Apple's iMessage service and Messages application penalizes those Apple device owners who deign to switch away from Apple to other non-Apple wireless cellular devices. These former Apple device owners are penalized and injured by having Apple's iMessage service and Messages application fail to deliver text messages sent from Apple devices to the new non-Apple devices of these former Apple device users. This was the exact fate of Plaintiff, who, solely as a result of Apple's iMessage's and Messages' doing, has lost or failed to received countless text messages sent to her from Apple devices ever since she switched away from an Apple iPhone 4 to a newer Samsung S5 phone.

6. Defendant Apple Inc. is a corporation organized under the laws of the State of California, and having its principal place of business at 1 Infinite Loop in Cupertino, California 95014. Apple is one of the world's largest and most popular maker of, *inter alia*, wireless devices, such as the various versions of the iPhone and iPad. These devices are operated by Apple's software operating service, commonly abbreviated as iOS (which may be followed by a number or roman numeral to designate the version of the software). Starting with the iOS 5 update to Apple's software operating system on or about October 12, 2011, Apple introduced its iMessage service and Messages client application. Apple's current CEO, Tim Cook, has previously touted that Apple's iMessage delivers 28,000 messages per second.

**TEXT MESSAGING, APPLE'S iMESSAGES, AND APPLE'S WRONGFUL CONDUCT DIRECTED AT THOSE SUBSCRIBERS WHO CHOOSE TO REPLACE THEIR APPLE DEVICES WITH NON-APPLE DEVICES.**

7. This action concerns the practice of text messaging, also commonly referred to as texting. Text messaging is the act of composing and sending a brief, electronic message between two or more mobile phones, or fixed or portable devices over a phone network. The term originally referred to messages sent using the Short Message Service ("SMS"). It has grown to

Class Action Complaint *Adrienne Moore v. Apple Inc.*,
No. _____

4

include messages containing image, video, and sound content (known as MMS messages). The sender of a text message is known as a texter.  Today, text messaging is the most widely used mobile data service, with 74% of all mobile phone users worldwide, or 2.4 billion out of 3.3 billion phone subscribers.

8. Traditionally, text messages were and are sent between the texter and the recipient through a cellular network.  After the texter composes the text message and hits the "Send" or similar button on his wireless device, the text message is transmitted in SMS format through the cellular network to an interim facility known as the SMS Center.  From there, the SMS transmission is routed to a transmission tower of the network.  The network's transmission tower, in turn, sends the message to the recipient's wireless device through that device's control channel.  At that point, the recipient receives notification on his device of the actual SMS (or MMS) text message.

9. Given the popularity of text messaging, today, wireless service providers, like Verizon Wireless, AT&T, Sprint, T-Mobile, and others, provide their users with the facility to send and receive text messages (which, as detailed in paragraph 8 *supra*, make use of the carrier's wireless network for transmission of these text messages).

10. Part of the contractual relationship, therefore, between Plaintiff and other putative class members and their respective wireless service providers (Verizon Wireless, in the case of Plaintiff) is the subscriber's ability to send and receive text messages as part of their subscription.

11. On or about October 12, 2011, Apple released its OS 5 update to the software powering Apple wireless devices, such as iPhones and iPads.  As part of that updated, Apple included its iMessage service, which contained Apple's Messages client application.  As part of that and subsequent Apple software versions, Apple's software on Apple iPhone and iPad wireless devices would employ iMessage and Messages, instead of the traditional SMS network route, to send text messages between users of Apple wireless devices who had an enbabled iMessage service on their device.

12. As  a result of Apple's software upgrade, if a user's iPhone or iPad is running iOS

Class Action Complaint *Adrienne Moore v. Apple Inc.*,
No. _____

5

5 or greater, the Message messaging application will send text messages as an iMessage instead of the usual text message when the text message is being sent between users who have the Apple iMessage service on their devices. This means that if one is sending text messages with another iOS 5 user, there is no SMS charge associated with the messaging. It is merely treated as an additional data transfer.

13. The undisclosed drawback that forms the gravamen of this action concerns the manner in which Apple's iMessage and Messages act once an iPhone or iPad user switches their wireless telephone number to a non-Apple device, as Plaintiff did recently.  Once that occurs, the former Apple device user, who now uses a non-Apple device, is unable to receive text messages sent to her by users of Apple devices that employ iMessage and Messages (i.e., all Apple wireless devices operating OS 5 or more recent software versions).

14. Due to an undisclosed feature in Apple's iMessage and Messages service and application, the Apple Message application does not recognize that the same telephone number of the former Apple device user (who, herself, was previously receiving text messages through iMessage) is no longer using an Apple device and hence is no longer using iMessage or Messages. Thus, when a text message is sent from an Apple device user to a person whose telephone number used to be associated with an Apple device but is now used on a non-Apple telephone, the message is not delivered to the non-Apple device user on her new non-Apple device.  Worse yet, this person receives no notification whatsoever that a text message directed to her was not delivered.

15. The effect is readily apparent.  Solely as a result of Apple's doing, Plaintiff, like other wireless carrier subscribers who replace their Apple devices with non-Apple wireless devices, are penalized and unable to obtain the full benefits of their wireless service contracts because Apple's iMessage and Messages service and application prevent these users from receiving the text messages that they are entitled to receive as part of their wireless service contracts with their wireless providers (Verizon Wireless, in the case of Plaintiff).

16. Apple knew but never disclosed that its iMessage service and Message application

Class Action Complaint                                                                   *Adrienne Moore v. Apple Inc.*,
                                                                                          No. _____

would prevent Apple device owners from receiving text messages sent to them from other Apple users once these Apple device owners replaced their devices with non-Apple wireless devices. To the contrary, Apple touted the superior attributes and enhanced benefits of the iMessages and Message service and application while omitting any mention of this serious consequence. Had Plaintiff and the class members been informed by Apple that iMessage would work in such a fashion so as to prevent them from receiving text messages, once they switched their Apple devices to non-Apple devices, Plaintiff and the putative class members would not have downloaded the iMessage and Messages service and application, or would not have purchased an iPhone or other Apple device in the first instance.

**PLAINTIFF'S OWN EXPERIENCED WITH HAVING APPLE PREVENT HER FROM RECEIVING HER TEXT MESSAGES ONCE SHE REPLACED HER iPHONE WITH A NON-APPLE DEVICE**

17.     Plaintiff is, and at all times relevant to this Class Action Complaint was, a subscriber of Verizon Wireless service for her wireless voice and data needs.  Up until approximately April 16, 2014, Plaintiff owned and used an iPhone 4 as her wireless device (whose wireless service was provided by Verizon Wireless).  As part of her wireless service, Plaintiff routinely sent and received text messages, including text messages from other Apple iPhone users. Her iPhone operating system was loaded with Apple's iMessage and Messages service and application, which her iPhone used to send and receive text messages.

18.     On or about April 2014, Plaintiff switched from her Apple iPhone to a non-Apple Android wireless telephone (a Samsung S5), but kept her same cellular telephone number. Shortly after the switch away from an iPhone, Plaintiff began noticing that she was not receiving text messages that she had been expecting to receive from texters who were using Apple iPhone or iPad devices.

19.     Upon discovering this problem with receipt of text messages, Plaintiff initially contacted Verizon Wireless.  She was told that all she needed to do was to "turn off" iMessage in her old iPhone.  Plaintiff did so, but this did not resolve the problem because while

Class Action Complaint                                              *Adrienne Moore v. Apple Inc.*,
                                                                    No. _____
7

she now receives text messages sent from some iPhones, she still fails to receive text messages that are sent to her from other iPhones.

20. Plaintiff contacted Verizon Wireless again. The personnel at Verizon Wireless informed Plaintiff that this has been an issue when people switch from an Apple iPhone or other Apple device to a non-Apple phone. Verizon Wireless attempted to do some more troubleshooting with Plaintiff, but this was to no avail, as her problem persisted. Verizon Wireless patched Plaintiff to Apple for assistance.

21. Apple personnel informed Plaintiff that even though she had turned iMessage off in her old iPhone she may still not be receiving all her text messages because some texters using Apple devices may not be using the latest Apple iOS version. Rather than Apple coming up with a solution to a problem created by Apple, Apple's representative instead suggested to Plaintiff that Plaintiff get her text message senders to update their Apple iOS to the latest version, or have them delete and then re-add Plaintiff as their contact, or have Plaintiff and these unsuccessful Apple texters start a new text conversation with Plaintiff.

22. Aside from the fact that Plaintiff should not be tasked with the mission of coming up with fixes to a flaw in Apple's own service and application, the suggestions proffered by Apple's personnel proved wholly unworkable and did not solve the issue. First, precisely because the texts are not being delivered to Plaintiff, it is impossible for Plaintiff to identify ahead of time which persons are sending her undelivered text messages from Apple devices that are not running the latest Apple iOS (and, even if she could, many Apple users may be unwilling to update their iOS to the latest version). The other two "solutions" suggested by Apple—that she be deleted and then re-added as a contact, or that a new text conversation be started with her, were tried by Plaintiff and some of her unsuccessful Apple texters, but that did not solve the problem (these Apple "suggestions" also suffer from the same flaw that it is impossible for Plaintiff to discern ahead of time all people who are attempting to send her text messages precisely because these text messages are not being delivered to Plaintiff as a result of the flaw in iMessage and Messages).

23. The unfortunate and unacceptable state of affairs, therefore, is that Plaintiff,

Class Action Complaint *Adrienne Moore v. Apple Inc.*, No. _____

as well as the other putative class members, now have text messages that are routinely not delivered to them (and neither Plaintiff nor the putative class members are notified of the failed delivery attempt) solely because they deigned to use Apple's iMessage and Message service and application, but ultimately chose to replace their Apple devices with a non-Apple phone or device.

**THE EXPERIENCES OF THE PUBLIC AT LARGE AND APPLE'S INDIFFERENCE TO THIS OUTCRY**

24.     Plaintiff's experiences are bad enough to warrant action.  Unfortunately, Plaintiff's experience is neither isolated nor anomalous.  Across the country, countless of similarly situated former Apple device owners, who have since switched away from Apple to a non-Apple device, have experienced the same fate of undelivered text messages.

25.     So pervasive is the problem that a number of public internet fora have been launched where former Apple device owners have posted their experiences and complaints online in the hope of getting the matter resolved.  To date, these complaints have fallen on deaf ears, as Apple has failed to come up with a solution to the undelivered text message problem of Apple's own making.

26.     Further evidencing the pervasiveness of the problem, on May 14, 2014, Business Insider published a news article authored by Jim Edwards entitled, "*An Apple Employee Admits That iPhones Often Won't Deliver Texts If You Switch To Android.*"   A copy of the news article was publicly posted on the Yahoo! News webpage and is viewable at http://finance.yahoo.com/news/apple-employee-admits-iphones-often-140622623.html (last visited May 14, 2014).  A copy of the article is also attached hereto as Exhibit 1 to this Class Action Complaint.  The article details the nature of the problem, Apple's persistent denial or indifference to it, and Apple's belated admission that there is a problem but highlights Apple's inability or unwillingness to solve it.  To quote from the news article:

For years, Apple has said very little about persistent rumors that its iPhone

Class Action Complaint                                                                          *Adrienne Moore v. Apple Inc.*,
                                                                                                 No. _____
9

> text messaging system in some way discriminates against Android users, either by delivering messages to them late or not delivering them at all.
>
> Now an Apple customer support employee has admitted to Lifehacker's Adam Pash that, in fact, "a lot" of users have this problem: If you switch from an iPhone to an Android, iMessage won't deliver texts from iPhone users to your new Android phone.
>
> There is no fix in sight, Pash says he was told. (At Business Insider, I've had a version of this problem firsthand: My iPhone colleagues get my texts immediately; those on Android seem to get them later, up to a few minutes behind.)
>
> . . . .
>
> Apple's customer support was initially useless when Pash called for help. Pash writes:
>
> Apple Support: "Can you try deleting the contact from your new iPhone and re-adding it?"
>
> Me: "I can't tell everyone I know to delete and re-add me as a contact."
>
> Eventually, the service rep admitted there was a problem. Pash writes:
>
> - This is a problem a lot of people are facing.
>
> - The engineering team is working on it but is apparently clueless as to how to fix it.
>
> - There are no reliable solutions right now — for some people the standard fixes work immediately; many others are in my boat.
>
> This is, apparently, a key admission from Apple. Previously the company had advised people to actively switch off iMessage before disposing of their old iPhone in favor of an Android. Its help page hints at how long the Android text issue lasts, too:
>
> If you want to transfer your SIM card or phone number to a device that doesn't support iMessage Go to Settings > Messages and turn off iMessage if you plan to transfer your SIM card or phone number from an iPhone to a device that doesn't support iMessage. If you don't, other iOS devices might continue to try to send you messages using iMessage, instead of using SMS or MMS, for up to 45 days.
>
> We asked Apple for further comment but did not immediately get a response.

Ex. 1 hereto at 1-2.

Class Action Complaint *Adrienne Moore v. Apple Inc.*, No. _____

10

27. The Business Insider article references and quotes an Apple Help Page on Apple's website. A copy of that Apple Help page is attached hereto as Exhibit 2. In that Help Page on Apple's website, which was last modified only on March 2014, Apple instructs people who plan on switching away from an Apple device to a non-Apple cellular phone that if they do not turn off iMessage, "other iOs devices might continue to try to send you messages using iMessage, instead od using SMS or MMS, *for up to 45 days*." Ex. 2 hereto at 2 (emphasis added). Not only does this Help page acknowledge the existence of the issue being complained about by Plaintiff and the putative class members, but it also provides erroneous information. Specifically, the Apple Help page suggests that turning off iMessage in the old iPhone device that the user is switching away from will prevent text message misdelivery from occurring, but this is not the case. Plaintiff, in fact, turned off her iMessage service on her old iPhone but, nevertheless, continues to have text messages sent to her from other Apple users not be delivered to her new non-Apple device.

## CLASS ACTION ALLEGATIONS

28. Pursuant to Federal Rule of Civil Procedure 23, Plaintiff seeks to represent a class of all persons in the United States who, during the Class Period, owned an Apple device operated by iOS 5 or more recent software operating system and who switched their wireless service to a non-Apple device. Expressly excluded from the class definition are all attorneys, judicial officers, and their staff working or assigned to this case, as well as all employees and officers of Defendant. Plaintiff reserves the right to amend this class definition as case circumstances warrant.

29. The members in the proposed class are so numerous that individual joinder of all members is impracticable, and the disposition of the claims of all class members in a single action will provide substantial benefits to the parties and Court. This is so because Apple wireless devices equipped with iMessages and Message service and application number in the millions, and each month, a significant number of these Apple device owners switch their wireless service away from their Apple devices to a non-Apple wireless device.

Class Action Complaint                                                                 *Adrienne Moore v. Apple Inc.*,
                                                                                        No. _____

30. Questions of law and fact common to Plaintiff and the class exist and predominate over any such questions affecting only individual class members. Among these common, predominating questions are:

  a. Whether Apple's iMessage and Messages service and client application contain a feature or flaw that causes text messages sent from iPhone users to not be delivered to class members who switched their wireless service away from an iPhone or iPad to a non-Apple device;

  b. Whether Apple's employ of its iMessage and Messages service and client application in such a manner so as not to deliver text messages to users who switch their wireless service away from an Apple device tortiously interferes with the contracts between these users and their respective wireless carrier, pursuant to which the users are contractually entitled to receive and send text messages;

  c. Whether Apple properly and appropriately disclosed that its iMessage and Messages service and client application would prevent class members from receiving certain text messages once these class members switched their wireless service away from an Apple device;

  d. Whether Apple's conduct, as alleged herein, has injured or is likely to imminently injure the class members; and,

  e. The proper remedy;

31. Plaintiff's claims are typical of class members' claims in that they are based on the same underlying facts, events, and circumstances relating to Apple's conduct; namely, the non-delivery of text messages once Plaintiff and the class members switched their wireless service away from an Apple.

32. Plaintiff will fairly and adequately represent and protect the interests of the class, has no interests incompatible with the interests of the class, and has retained counsel competent and experienced in class litigation. Plaintiff, herself, has experienced the injury being

Class Action Complaint                                          *Adrienne Moore v. Apple Inc.*,
                                                                No. _____

complained of, because she has had text messages that were not delivered to her following her switch away from an Apple iPhone 4 equipped with iMessage and Messages to a non-Apple wireless telephone.

33. Class treatment is superior to other options for resolution of the controversy because the relief sought for each class member is relatively small such that, absent representative litigation, it would be unfeasible for class members to redress the wrongs done to them, particularly when litigating against such a large and well financed corporate entity like Apple. Moreover, absent class-wide adjudication, there would be a risk of multiple lawsuits against Defendant that could impose inconsistent and incompatible standards of conduct on Apple regarding, *inter alia*, its disclosure, text messaging, or application functionality obligations.

34. Apple has acted or refused to act on grounds generally applicable to the class, thereby making final injunctive relief and corresponding declaratory relief appropriate. Specifically, Apple has employed iMessage and Messages as part of its operating systems, and that service and client application works in such a fashion that causes class members to not receive certain text messages once they switch their wireless service to a non-Apple device. Apple has not adequately disclosed this adverse consequence of using iMessage and Messages, and has not properly disclosed or provided a fix or remedy to prevent this from occurring or to recover the misdelivered text messages. If Plaintiff prevails on the merits of her claims, then final injunctive relief mandating that Apple remedy the consequences brought about by its conduct, and that it prevent it from reoccurring, would be proper.

## COUNT I
### (TORTIOUS INTERFERENCE WITH CONTRACT)

35. Plaintiff hereby incorporates each and every paragraph of this Class Action Complaint with the same force and effect as if each of these paragraphs had been fully restated herein.

36. Plaintiff and the class members are subscribers to wireless cellular service who

Class Action Complaint                                                                 *Adrienne Moore v. Apple Inc.*,
                                                                                       No. _____

have a contractual relationship with a wireless carrier or service provider (Verizon Wireless, in the case of Plaintiff) to receive cellular service on their non-Apple cellular telephone or other wireless device (the Samsung S5, in Plaintiff's case). As part of that contract, Plaintiff and the class members are entitled to, *inter alia*, send and receive text messages in exchange for the monthly fee and charges they pay to their wireless carrier.

37. Plaintiff and all class members were users of an Apple iPhone, iPad, or iPod Touch device that received cellular service from the class member's wireless service provider. At some point, Plaintiff and the class members switched the wireless device on which they received cellular service from their carrier from an Apple device to a non-Apple device. Although the contract they had with their wireless carrier entitles Plaintiff and the class members to send and receive text messages on their non-Apple device, Apple tortuously interferes with this contractual relationship and prevents Plaintiff and the class members from obtaining the full benefits of this contractual relationship by having its iMessage and Messages service and application act to prevent certain text messages sent to Plaintiff and the class members from being delivered to Plaintiff and the class members on their non-Apple devices.

38. Apple was aware of the existence of the wireless service contract between, on the one hand, Plaintiff or the class members and, on the other hand, the class members' wireless service providers because these same class members were Apple device owners whose wireless accounts were updated by the wireless service provider to reflect that they no longer were to receive their wireless service on their former Apple devices, but instead, were to have their wireless service be provided on non-Apple devices that the class members had chosen as replacements for their Apple devices.

39. Apple's tortious interference with the contract between Plaintiff or the class members and their respective wireless carriers has resulted in an actual breach of these contracts because, as a result of Apple's tortious interference, the wireless carrier is no longer able to deliver all sent text messages to Plaintiff and the class members, as the carrier is called upon to do under its contracts with Plaintiff or the class members.

Class Action Complaint                                                      *Adrienne Moore v. Apple Inc.*,
                                                                             No. _____

40. As a direct, proximate, and foreseeable result of Apple's tortious interference with Plaintiff and the class members' contracts with their respective wireless carriers, Plaintiff and the class members have been legally injured and sustained damages by not receiving the full benefit of their contractual bargain in that, *inter alia*, text messages that they should have been receiving as part of their wireless service contracts were not delivered to them.

## COUNT II

### (VIOLATIONS OF CALIFORNIA'S CONSUMER LEGAL REMEDIES ACT)

41. Plaintiff incorporates by reference each of the paragraphs of this Class Action Complaint with the same force and effect as if these paragraphs had been fully restated here.

42. California's Consumer Legal Remedies Act ("CLRA") prohibits deceptive practices in connection with the conduct of a business that provides goods, property, or services primarily for personal, family, or household purposes.

43. Plaintiffs and the putative class members were "consumers" within the meaning of the CLRA in that they purchased cellular telephone or other wireless devices, and subscribed to wireless cellular service for these devices.

44. Apple's policies, acts, and practices of manufacturing, distributing, marketing, promoting, selling, and advertising its iMessage and Messages service and application without disclosure that the service would prevent Apple device owners from receiving text messages from other Apple owners once the users replaced their Apple device with a non-Apple device, were designed to, and did, result in the purchase and use of the products primarily for personal, family, or household purposes, and violated and continue to violate the following sections of the CLRA. Specifically, Apple's conduct has violated at least the following statutory subsections of the CLRA:

   a. § 1770(a)(5): representing that goods have characteristics, uses, or benefits which they do not have;

Class Action Complaint                                          *Adrienne Moore v. Apple Inc.*,
                                                                No. _____

   b.  § 1770(a)(7): representing that goods are of a particular standard, quality, or grade if they are of another;

   c.  § 1770(a)(9): advertising goods with intent not to sell them as advertised.

45.  As a result, Plaintiff and the putative class members have suffered irreparable harm and are entitled to injunctive and equitable relief, as well as reasonable attorneys' fees and costs of suit.  At this time, Plaintiff does not seek monetary damages as part of her CLRA claim. Following the filing of this Class Action Complaint, Plaintiff will mail Apple a CLRA demand letter in the manner required by statute. If Apple does not agree and perform the relief requested in the demand letter within 30-days of its receipt, Plaintiff reserves the right to amend this Class Action Complaint to also then assert a claim for relief for money damages under the CLRA.

## COUNT III

### (VIOLATIONS OF CALIFORNIA'S UNFAIR COMPETITION LAW, Calif. Bus. And Prof. Code, § 17200 et. seq.)

46.  Plaintiff incorporateS by reference each of the paragraphs of this Class Action Complaint with the same force and effect as if those allegations had been fully restated here.

47.  California's Unfair Competition Law ("UCL") prohibits any "unlawful, unfair or fraudulent business act or practice."  (Cal. Bus. & Prof. Code § 17200).

48.  Apple's business practice of distributing, marketing, and its iMessage and Messages service and application in the manner described herein and without disclosing that the iMessage and Messages service and application would prevent its users from receiving certain text messages after they replaced their Apple devices with non-Apple devices is unlawful because it, *inter alia*, violates the CLRA and tortuously interferes with Plaintiff's and the class members' contracts with their wireless service providers, as is alleged in this Class Action Complaint.

49.  Apple's business practice of distributing, marketing, and its iMessage and

Messages service and application in the manner described herein is also an unfair business practice because it, *inter alia*, threatens to harm competition in its incipiency. Class members and others who become aware that switching their Apple iPhone or other wireless devices in favor of non-Apple products will result in these persons not being able to receive text messages sent to them by other Apple users are likely to be disincentivized from switching from Apple to an Apple competitor. That much has been underscored now that the issue with Apple's iMessage and Messages service and application has been made public in news articles, such as the Business Insider publication attached hereto as Exhibit 1. As that publication reports "Apple is ounishing you for ditching your iPhone by cutting you off from your friends, and they want to make it feel like you need to be on an Apple device to talk to the people you care about." Exhibit 1 hereot at 1 (internal quotation marks omitted).

50.  Plaintiff sustained legal injury in using Apple's iMessage and Messages service and application at a time when Apple was violating the UCL because, *inter alia*, Plaintiff made a purchase she would not have made at all, or not on the terms that she did, as a result of being unaware of the undisclosed adverse consequence of using Apple's iMessage and Messages service and application, and then switching away from an Apple device. Plaintiff has also sustained legal injury as a result of Apple's UCL violations in that she has been unable to receive the full benefit of her contractual bargain with her wireless carrier as a result of Apple's actions that prevent Plaintiff from receiving all her text messages, as she was entitled to receive under her wireless service contract.

51.  In making their of Apple devices, Plaintiff and the class members conveyed money and other intangible benefits onto Apple and, hence, are entitled to, *inter alia*, restitution and all other remedies available under the UCL. Plaintiffs are also entitled to and do seek declaratory and injunctive relief including, but not limited to, a Court Order forcing Apple to fix the iMessage and Messages service and application in such a manner that will stop the service from preventing Plaintiff and the class members from receiving text messages sent to them from other Apple users while Plaintiff and the class members have a non-Apple device, and to require

Class Action Complaint                                                                                      *Adrienne Moore v. Apple Inc.*,
                                                                                                                         No. _____

Apple to issue corrective advertising or other disclosure campaign to warn class members about the adverse consequences of having used iMessage and Messages and subsequently switching to a non-Apple device, and informing class members how to remedy the adverse consequences brought about by iMessage and Message once the class members switch to a non-Apple device.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff, on behalf of herself and on behalf of the other members of the Class, requests award and relief as follows:

A. An order certifying that this action is properly brought and may be maintained as a class action, that Plaintiff be appointed Class Representative and Plaintiff's counsel be appointed Class Counsel.

B. Damages to compensate Plaintiff and the Class members for Apple's tortious interference with Plaintiff's and the Class members' contracts with their wireless carriers (money damages are not being currently sought as redress under the CLRA, but may be sought if and when Apple fails to comply with Plaintiff's CLRA demand letter), with such damages to be awarded to Class members from a common fund Ordered by the Court to be set up and funded by Apple;

C. Restitution in such amount to be determined by the Court;

D. A mandatory injunction requiring Apple to fix its iMessage and Messages service and application, such that these products do not continue to prevent Plaintiff and the Class members from receiving all their text messages sent to them for other Apple devices, and requiring Apple to deliver to Plaintiff and the Class members all previous text messages that were not delivered to them on their non-Apple devices as a result of the Apple iMessage and/or Messages service and application;

E. An Order for injunctive relief requiring Apple to employ corrective disclosure that warns Class members and the public about the adverse consequences of using iMessage and

                                                                                     No. _____
18

Messages and subsequently switching from an Apple device to a non-Apple device, and instructing Plaintiff and the Class members as to how to remedy these adverse consequences;

      F.      An order awarding Plaintiff her costs of suit, reasonable attorneys' fees, and pre and post-judgment interest.

      G.      An Order directing Apple to disseminate a Court-approved notice to the absent Class members, informing them about the pendency of this class action, and their rights in that regard;

      H.      Such other and further relief as may be deemed necessary or appropriate.

## JURY DEMAND

Plaintiff hereby demands a jury trial for all issues so triable.

Dated: May 15, 2014                                      /s/ Roy A. Katriel____(SBN 265463)_____
                                                                Roy A. Katriel, Esq. (SBN 265463)
                                                                **THE KATRIEL LAW FIRM**
                                                                4225 Executive Square, Suite 600
                                                                La Jolla, CA 92037
                                                                 Telephone: (858) 242-5642
                                                                Facsimile: (858) 430-3719
                                                                e-mail: rak@katriellaw.com

                                                                *Counsel for Plaintiff and the Putative Class*

Class Action Complaint                                                    *Adrienne Moore v. Apple Inc.*,
                                                                                       No. _____