**United States District Court**
For the Northern District of California

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA
SAN JOSE DIVISION

| | |
|---|---|
| ADRIENNE MOORE, ON BEHALF OF HERSELF AND ALL OTHERS SIMILARLY SITUATED, <br><br> Plaintiffs, <br><br> v. <br><br> APPLE, INC., <br><br> Defendant. | Case No.: 14-CV-02269-LHK <br><br> ORDER GRANTING IN PART AND DENYING IN PART MOTION TO DISMISS |

Plaintiff Adrienne Moore ("Plaintiff") brings this Complaint, a putative class action on behalf of herself and others similarly situated against Defendant Apple, Inc. ("Defendant") for tortious interference with contract and violations of California's Unfair Competition Law and California's Consumers Legal Remedies Act. Compl., ECF. No. 1. Before the Court is Defendant's motion to dismiss Plaintiff's Complaint. ("MTD"), ECF No. 18. Plaintiff opposed the motion. ("Opp."), ECF No. 22. Defendant replied to the opposition. ("Reply"), ECF No. 24. Plaintiff requests judicial notice of Defendant's license agreements. ("RJN"), ECF No. 23. Pursuant to Civil Local Rule 7-1(b), the Court finds this matter suitable for decision without oral argument and accordingly VACATES the hearing on this motion set for November 13, 2014, at 1:30 p.m. The case management conference remains as set on November 13, 2014, at 1:30 p.m. Having considered the submissions of the parties and the relevant law, the record in this case, and for good

1

Case No.: 14-CV-02269-LHK
ORDER GRANTING IN PART AND DENYING IN PART MOTION TO DISMISS

United States District Court
For the Northern District of California

1    cause shown, the Court hereby GRANTS in part and DENIES in part Defendant's motion to

2    dismiss for the reasons stated below.

3    **I.       BACKGROUND**

4         **A.       Factual Allegations**

5         Defendant Apple, Inc., a California corporation headquartered in Cupertino, California is

6    "one of the world's largest and most popular maker of . . . wireless devices, such as the various

7    versions of the iPhone and iPad." Compl. ¶ 6. Apple's wireless devices work on Apple's software

8    operating system, commonly known as "iOS." *Id.* Apple released iOS 5 in October 2011 and

9    introduced its "iMessage service and Messages client application" as part of iOS 5. *Id.* Plaintiff

10   Adrienne Moore is a resident of California. *Id.* ¶ 5. In March 2011, Plaintiff purchased an iPhone 4.

11   *See* Declaration of Jeffrey Kohlman in support of Apple's Motion to Dismiss, ECF No. 18; Compl.

12   ¶ 5. Plaintiff subscribed to Verizon Wireless for her wireless service needs. Compl. ¶ 5. At some

13   point after iOS 5's release in October 2011, but before April 16, 2014, Plaintiff updated her iPhone

14   4 to iOS 5, which included iMessage and Messages. *Id.* After updating her iOS, Plaintiff's iPhone 4

15   "began using by default the iMessage service to route text messages from and to her through

16   Apple's Messages application" when the messages involved other Apple devices running iOS 5 or

17   later. *Id.* On or about April 16, 2014, Plaintiff replaced her iPhone 4 with a Samsung Galaxy S5. *Id.*

18   As a result of that switch, Plaintiff alleges that she has failed to receive "countless" text messages

19   sent to her from Apple device users. *Id.*

20        Plaintiff alleges that Apple failed to disclose that use of iMessage and Messages would

21   result in undelivered messages if an iPhone user switched to a non-Apple device. More

22   specifically, Plaintiff alleges that Apple knowingly omitted material information about the

23   Messages application's inability to detect when a former Messages user switches to a non-Apple

24   device, resulting in undelivered text messages. Apple's actions tortiously interfered with Plaintiff's

25   contract with Verizon Wireless because Plaintiff was entitled to send and receive text messages

26   under her wireless service contract and Apple's actions deprived her of the benefit of receiving text

27   messages from Apple device users.

28

2

Case No.: 14-CV-02269-LHK
ORDER GRANTING IN PART AND DENYING IN PART MOTION TO DISMISS

**United States District Court**
For the Northern District of California

### 1.    Text Messages, iMessage, and Messages

Text messaging, or "texting," is the act of sending or receiving "brief, electronic message[s] between two or more mobile phones, or fixed or portable devices over a phone network." Compl. ¶ 7. Text messaging is the "most widely used mobile data service." *Id.* Texting originally only referred to messages sent using the Short Messages Service ("SMS"), but now also encompasses messages containing media such as pictures, videos, and sounds ("MMS"). *Id.* When using SMS to send a text message, the message is transmitted in SMS form to an "SMS Center," where it is then routed to a transmission tower operated by the service network. *Id.* The transmission tower then sends the message to the recipient's wireless device through the device's control channel. *Id.* Once a message is received, the device notifies the recipient of receipt. *Id.* This process is the same for MMS messages. *Id.* In light of text messaging's popularity with users, the major cellular service networks, including Verizon Wireless, provide their users with the ability to send and receive text messages in this fashion. *Id.* ¶¶ 9–10.

Apple wireless devices are capable of sending SMS and MMS messages as described above, but Apple also provides iMessage, a "messenger service," that uses data networks such as Wi-Fi, 2G, 3G, and LTE networks to send text messages, pictures, video, audio, documents, contact information, and group messages to other Apple devices with the Messages application. *Id.* ¶ 5. Rather than incurring an SMS charge to send a text message, iMessage text messages are "treated as . . . additional data transfer[s]." *Id.* ¶ 12. An Apple device user with iOS 5 or higher sending a text message to another Apple device equipped with iOS 5 or higher will automatically use Apple's Messages application to send text and media iMessages rather than using SMS. *Id.* ¶ 11.

### 2.    Plaintiff's Experiences

On or about April 16, 2014, Plaintiff replaced her iPhone 4 with a Samsung Galaxy S5. *Id.* Plaintiff retained her same cellular telephone number and continued to subscribe to Verizon Wireless. *Id.* The non-Apple device did not have Messages and could not send or receive iMessages. *Id.* ¶¶ 13–16. "Shortly after" Plaintiff switched to the Samsung device, Plaintiff noticed she was not receiving text messages she expected to receive from users of Apple devices. *Id.*¶ 18.

3

1      After this initial discovery, Plaintiff contacted her service provider, Verizon Wireless, which

2      informed her that she needed to "turn off" Messages on her old iPhone. *Id.* ¶ 19. After doing so,

3      Plaintiff began to receive text messages from some Apple device users, but not from others. *Id.*

4      Plaintiff again contacted Verizon Wireless and was told that this "had been an issue when people

5      switch from an Apple . . . device to a non-Apple phone," and after attempting additional trouble

6      shooting, Plaintiff was referred to Apple for further assistance. *Id.* ¶ 20.

7           Plaintiff alleges that the Apple representative informed her that some Apple device users

8      might not be using the latest iOS, which would result in Plaintiff not receiving their text messages.

9      *Id.* ¶ 21. The Apple representative then suggested that Plaintiff have the text message senders

10     update to the latest iOS, delete and then re-add Plaintiff as a contact, or start a new text message

11     "conversation" between Plaintiff and the Apple user. *Id.* Plaintiff attempted some of these

12     proposals, but they were unsuccessful. *Id.* ¶ 22. Plaintiff also contends these solutions do not

13     address the threshold issue that Plaintiff is unable to discern which of her contacts are using

14     Messages to contact her because she is not receiving their messages. *Id.*

15          Plaintiff is not the only former Apple device user to encounter the problem of undelivered

16     text messages. *Id.* ¶¶ 24–25. "[C]ountless" former Apple device users have not received messages

17     sent by Apple device users. *Id*. Plaintiff cites a Business Insider article discussing an Apple

18     employee's apparent admission that "'a lot' of users have this problem: If you switch from an

19     iPhone to an Android, iMessage won't deliver texts from iPhone users to your new Android

20     phone." *Id.* ¶ 26; Compl. Exh. 1. Plaintiff further alleges that Apple's Help Page on its website

21     provides misleading information regarding how to prevent the "undelivered messages" problem.

22     Compl. ¶ 27. The Help Page instructs users to turn off iMessage on their old iPhones because "[i]f

23     you don't, other iOS devices might continue to try to send you messages using iMessage, instead of

24     using SMS or MMS, for up to 45 days." Compl. Exh. 2. Despite following this instruction, Plaintiff

25     continued to not receive messages from Apple users. Compl. ¶ 27. Plaintiff alleges that had Apple

26     informed her that iMessage would prevent her from receiving text messages if she switched to a

27     non-Apple device, she "would not have downloaded the iMessage and Messages service and

28     application, or would not have purchased an iPhone or other Apple device in the first instance." *Id.*

4

Case No.: 14-CV-02269-LHK
ORDER GRANTING IN PART AND DENYING IN PART MOTION TO DISMISS

*United States District Court*
*For the Northern District of California*

**B.      Procedural History**

Plaintiff filed this putative class action Complaint on May 15, 2014. ECF No. 1. Defendant

filed its motion to dismiss on July 24, 2014. ECF No. 18. Plaintiff filed her opposition on August

21, 2014. ECF No. 22. Plaintiff further filed a request for judicial notice on August 22, 2014,

which Defendant did not oppose.[1] ECF No. 23. Defendant filed its reply on September 18, 2014.

ECF No. 24.

**II.      LEGAL STANDARDS**

**A.      Motion to Dismiss Under Rule 12(b)(6)**

Pursuant to Federal Rule of Civil Procedure 12(b)(6), a defendant may move to dismiss an

action for failure to allege "enough facts to state a claim to relief that is plausible on its face." *Bell*

*Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff

pleads factual content that allows the court to draw the reasonable inference that the defendant is

liable for the misconduct alleged. The plausibility standard is not akin to a 'probability

requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully."

*Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal citations omitted). For purposes of ruling on a

Rule 12(b)(6) motion, the Court "accept[s] factual allegations in the complaint as true and

construe[s] the pleadings in the light most favorable to the non-moving party." *Manzarek v. St.*

*Paul Fire & Marine Ins. Co.*, 519 F.3d 1025, 1031 (9th Cir. 2008).

Nonetheless, the Court need not accept as true allegations contradicted by judicially

noticeable facts, and the "[C]ourt may look beyond the plaintiff's complaint to matters of public

record" without converting the Rule 12(b)(6) motion into one for summary judgment. *Shaw v.*

*Hahn*, 56 F.3d 1128, 1129 n.1 (9th Cir.), *cert. denied*, 516 U.S. 964 (1995); *see Van Buskirk v.*

*Cable News Network, Inc.*, 284 F.3d 977, 980 (9th Cir. 2002); *Schwarz v. United States*, 234 F.3d

428, 435 (9th Cir. 2000). Nor is the Court required to "'assume the truth of legal conclusions

---

[1] The Court GRANTS Plaintiff's unopposed request for judicial notice of Apple's iOS 5 and iOS 4
License Agreements and takes judicial notice of the adjudicative facts contained therein. The
contents of these documents are necessarily implicated by Plaintiff's Complaint and neither party
contests the authenticity of the documents. *See* Fed. R. Evid. 201; *Rubio v. Capitol One Bank*, 613
F.3d 1195, 1199 (9th Cir. 2010); *Branch v. Tunnell*, 14 F.3d 449, 454 (9th Cir. 1994), *overruled on
other grounds, Galbraith v. Cnty. of Santa Clara*, 307 F.3d 1119 (9th Cir. 2002).

Case No.: 14-CV-02269-LHK
ORDER GRANTING IN PART AND DENYING IN PART MOTION TO DISMISS

*United States District Court*
For the Northern District of California

1    merely because they are cast in the form of factual allegations.'" *Fayer v. Vaughn*, 649 F.3d 1061,

2    1064 (9th Cir. 2011) (quoting *W. Mining Council v. Watt*, 643 F.2d 618, 624 (9th Cir. 1981)). Mere

3    "conclusory allegations of law and unwarranted inferences are insufficient to defeat a motion to

4    dismiss." *Adams v. Johnson*, 355 F.3d 1179, 1183 (9th Cir. 2004) (internal quotation marks and

5    citations omitted); *accord Iqbal*, 556 U.S. at 663–64. Furthermore, "a plaintiff may plead herself

6    out of court" if she "plead[s] facts which establish that [s]he cannot prevail on h[er] ... claim."

7    *Weisbuch v. Cnty. of L.A.*, 119 F.3d 778, 783 n.1 (9th Cir. 1997) (internal quotation marks and

8    citation omitted).

9         **B.     Motion to Dismiss Under Rule 12(b)(1)**

10        A motion to dismiss for lack of subject matter jurisdiction will be granted if the complaint

11   on its face fails to allege facts sufficient to establish subject matter jurisdiction. *See Savage v.*

12   *Glendale Union High Sch.*, 343 F.3d 1036, 1039 n.2 (9th Cir. 2003). A challenge to a plaintiff's

13   Article III standing is properly raised under Rule 12(b)(1). *White v. Lee*, 227 F.3d 1214, 1242 (9th

14   Cir. 2000). In considering a Rule 12(b)(1) motion, the Court "is not restricted to the face of the

15   pleadings, but may review any evidence, such as affidavits and testimony, to resolve factual

16   disputes concerning the existence of jurisdiction." *McCarthy v. United States*, 850 F.2d 558, 560

17   (9th Cir. 1988). Once a party has moved to dismiss for lack of subject matter jurisdiction under

18   Rule 12(b)(1), the opposing party bears the burden of establishing the court's jurisdiction. *See*

19   *Chandler v. State Farm Mut. Auto. Ins. Co.*, 598 F.3d 1115, 1122 (9th Cir. 2010).

20        **C.     Rule 9(b) Pleading Requirements**

21        Claims sounding in fraud or mistake are subject to the heightened pleading requirements of

22   Federal Rule of Civil Procedure 9(b), which requires that a plaintiff alleging fraud "must state with

23   particularity the circumstances constituting fraud." Fed. R. Civ. P. 9(b); *see Kearns v. Ford Motor*

24   *Co.*, 567 F.3d 1120, 1124 (9th Cir. 2009). To satisfy the heightened standard under Rule 9(b), the

25   allegations must be "specific enough to give defendants notice of the particular misconduct which

26   is alleged to constitute the fraud charged so that they can defend against the charge and not just

27   deny that they have done anything wrong." *Semegen v. Weidner*, 780 F.2d 727, 731 (9th Cir.

28   1985). Thus, claims sounding in fraud must allege "an account of the 'time, place, and specific

*United States District Court*
For the Northern District of California

6

Case No.: 14-CV-02269-LHK
ORDER GRANTING IN PART AND DENYING IN PART MOTION TO DISMISS

content of the false representations as well as the identities of the parties to the

misrepresentations.'" *Swartz v. KPMG LLP*, 476 F.3d 756, 764 (9th Cir. 2007) (per curiam). The

plaintiff must set forth "what is false or misleading about a statement, and why it is false." *In re*

*Glenfed, Inc. Sec. Litig.*, 42 F.3d 1541, 1548 (9th Cir. 1994) (en banc), *superseded by statute on*

*other grounds as stated in Ronconi v. Larkin*, 253 F.3d 423, 429 n.6 (9th Cir. 2001).

### D.      Leave to Amend

If the Court determines that the complaint should be dismissed, it must then decide whether

to grant leave to amend. Under Rule 15(a) of the Federal Rules of Civil Procedure, leave to amend

"shall be freely given when justice so requires," bearing in mind "the underlying purpose of Rule

15 to facilitate decisions on the merits, rather than on the pleadings or technicalities." *Lopez v.*

*Smith*, 203 F.3d 1122, 1127 (9th Cir. 2000) (en banc) (internal quotation marks and alterations

omitted). When dismissing a complaint for failure to state a claim, "'a district court should grant

leave to amend even if no request to amend the pleading was made, unless it determines that the

pleading could not possibly be cured by the allegation of other facts.'" *Id.* at 1130 (quoting *Doe v.*

*United States*, 58 F.3d 494, 497 (9th Cir. 1995) (internal quotation marks omitted)). Accordingly,

leave to amend generally shall be denied only if allowing amendment would unduly prejudice the

opposing party, cause undue delay, or be futile, or if the moving party has acted in bad faith.

*Leadsinger, Inc. v. BMG Music Publ'g*, 512 F.3d 522, 532 (9th Cir. 2008).

### III.     DISCUSSION

Plaintiff alleges that Apple tortiously interfered with Plaintiff's wireless service contract

with Verizon and violated California consumer protection laws. Specifically, Plaintiff pleads

violations of the Consumers Legal Remedies Act ("CLRA") and California's Unfair Competition

Law ("UCL"). Defendant seeks to dismiss Plaintiff's complaint on a number of grounds, including

that Plaintiff has failed to allege a cognizable injury, Plaintiff's UCL and CLRA allegations do not

satisfy Rule 9(b)'s heightened pleading standard, Plaintiff has not stated a UCL or CLRA claim,

and Plaintiff has failed to allege facts sufficient to support her tortious interference claim. The

Court begins with the threshold question of Article III standing.

Case No.: 14-CV-02269-LHK
ORDER GRANTING IN PART AND DENYING IN PART MOTION TO DISMISS

*United States District Court*
*For the Northern District of California*

United States District Court
For the Northern District of California

1

### A.    Article III Standing

2    Defendant contends that Plaintiff has failed to allege an injury-in-fact, as required to satisfy

3    the "case or controversy" requirement of Article III of the United States Constitution. *See Clapper*

4    *v. Amnesty Int'l USA*, 133 S. Ct. 1138, 1146 (2013). To satisfy Article III standing, a plaintiff must

5    allege: (1) injury-in-fact, e.g., the invasion of a legally protected interest, that is concrete and

6    particularized, as well as actual or imminent; (2) that the injury is fairly traceable to the challenged

7    action of the defendant; and (3) that the injury is redressable by a favorable ruling. *Monsanto Co. v.*

8    *Geertson Seed Farms*, 561 U.S. 139, 149 (2010); *Friends of the Earth, Inc. v. Laidlaw Envtl. Servs.*

9    *(TOC), Inc.*, 528 U.S. 167, 180–81 (2000). "The party invoking federal jurisdiction bears the

10   burden of establishing these elements . . . with the manner and degree of evidence required at the

11   successive stages of the litigation." *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 561 (1992). At

12   the pleading stage, "[g]eneral allegations of injury may suffice . . . ." *Friends of the Earth*, 528 U.S.

13   at 198.

14   In the instant case, Plaintiff has sufficiently alleged an injury-in-fact for Article III standing

15   purposes to survive a motion to dismiss. Plaintiff alleges that Apple's interference with the receipt

16   of her text messages deprived her of the full benefit of her contractual bargain with Verizon

17   Wireless. Compl. ¶¶ 40, 50. While Defendant takes issue with the particularity with which Plaintiff

18   pleads the terms of her contract with Verizon Wireless, Plaintiff adequately pleads that "as part of

19   th[e] contract, Plaintiff and the class members are entitled to . . . send and receive text messages in

20   exchange for the monthly fee and charges they pay to their wireless carrier." *Id.* ¶¶ 7, 36. Plaintiff

21   alleges that she used Apple's Messages application while she owned an Apple device, but ceased

22   using Messages when she switched to a non-Apple device. *Id.* ¶ 4. According to Plaintiff, Apple

23   has knowingly prevented former Apple device users from receiving text messages from current

24   Apple device users. *Id.* As a result of Apple's alleged interference, Plaintiff has "lost or failed to

25   receive countless text messages" that she is entitled to receive under her wireless service contract

26   with Verizon Wireless. As a party to the wireless service contract, Plaintiff has standing to bring

27   tort claims based on the contractual relationship. *See, e.g.*, *Ward v. Wells Fargo Home Mortg., Inc.*,

28   No. 14-00565, 2014 WL 3885836, at *2 (N.D. Cal. Aug. 7, 2014). Plaintiff has therefore alleged

8

**United States District Court**
For the Northern District of California

1    the invasion of a legal right that has resulted in an actual concrete injury: deprivation of a service

2    she has paid for as part of her contract with Verizon Wireless. At the motion to dismiss stage, these

3    allegations are sufficient to show Plaintiff has suffered an injury-in-fact as called for by Article

4    III's "case or controversy" requirement. *See Friends of the Earth*, 528 U.S. at 198.

5    **B.    Standing under the CLRA and UCL**

6    　　　Having concluded that Plaintiff has sufficiently alleged an injury-in-fact for Article III

7    standing, the Court now addresses Plaintiff's standing under the CLRA and UCL. Defendant

8    contends that Plaintiff's allegations are insufficient to meet the particularized standing

9    requirements of the CLRA and UCL. A plaintiff may bring a claim under the CLRA so long as she

10   "suffer[ed] any damage as a result of" a proscribed practice under the CLRA. Cal. Civ. Code §

11   1780(a). This means that to adequately plead a CLRA claim, a plaintiff must allege that she relied

12   on the defendant's alleged misrepresentation and that she suffered economic injury as a result.

13   *Durell v. Sharp Healthcare*, 108 Cal. Rptr. 3d 682, 697 (Cal. Ct. App. 2010).

14   　　　Similarly, under the UCL, a plaintiff must demonstrate that she "suffered injury in fact

15   and . . . lost money or property as a result of the unfair competition." Cal. Bus. & Prof. Code

16   § 17204.[2] Interpreting this statutory language, California courts have held that when the "unfair

17   competition" underlying a plaintiff's UCL claim consists of a defendant's misrepresentation, a

18   plaintiff must have actually relied on the misrepresentation, and suffered economic injury as a

19   result of that reliance, to have standing to sue. *See In re Tobacco II Cases*, 46 Cal. 4th 298, 326

20   (Cal. 2009). California courts have subsequently extended the actual reliance requirement to claims

21   brought under the UCL's unlawful prong to the extent "the predicate unlawful conduct is based on

22   misrepresentations." *Durell*, 108 Cal. Rptr. 3d at 687–88; *accord Kwikset Corp. v. Superior Court*,

23   246 P.3d 877, 888 (Cal. 2011). Moreover, in *Kwikset Corp. v. Superior Court*, the California

24   Supreme Court suggested that the actual reliance requirement applies whenever the underlying

25   misconduct in a UCL action is fraudulent conduct. *See Kwikset*, 246 P.3d at 888. In line with this

26   authority, this Court has concluded "that the actual reliance requirement also applies to claims

27   ────────────────

28   [2] A plaintiff who has standing under the UCL's "lost money or property" requirement will have
     suffered the requisite "damage" for purposes of establishing CLRA standing. *Hinojos v. Kohl's
     Corp.,* 718 F.3d 1098, 1108 (9th Cir. 2013).

9

Case No.: 14-CV-02269-LHK
ORDER GRANTING IN PART AND DENYING IN PART MOTION TO DISMISS

United States District Court
For the Northern District of California

1     under the UCL's unfair prong to the extent such claims are based on fraudulent conduct." *See Kane*

2     *v. Chobani, Inc.*, No. 12–2425, 2013 WL 5289253, at \*6 (N.D. Cal. Sept. 19, 2013). Accordingly,

3     the Court has consistently required allegations of actual reliance and injury at the pleading stage for

4     claims under all three prongs of the UCL where such claims are premised on misrepresentations.

5     *See Kane v. Chobani, Inc.*, No. 12–2425, 2014 WL 657300, at \*5 (N.D. Cal. Feb. 20, 2014).

6             Here, Plaintiff has alleged a CLRA claim, and three different UCL claims. The Court

7     therefore addresses whether Plaintiff has sufficiently pled actual reliance for her CLRA claim and

8     her "unlawful" business practice UCL claim predicated on the CLRA claim and its underlying

9     fraudulent conduct. For those two claims, the Court finds that Plaintiff has failed to plead actual

10    reliance as required by both the CLRA and UCL. Plaintiff alleges that she would not have

11    purchased her iPhone 4 had Apple fully disclosed that using Messages would result in undelivered

12    messages if the user switched to a non-Apple device. Compl. ¶ 50. However, Plaintiff's purchase

13    of the iPhone 4 occurred in March 2011, approximately 7 months *prior* to Apple's release of iOS 5

14    and the Messages application. MTD at 8. As a matter of basic chronology, Plaintiff cannot contend

15    that she relied on Apple's representations or omissions regarding the delivery of iMessages or the

16    Messages application in deciding whether to purchase the iPhone because those representations and

17    omissions had not yet taken place. The CLRA protects consumers from deceptive practices that are

18    "intended to result or which result[] in the sale or lease of goods or services." Cal. Civ. Code

19    § 1780(a). By definition, the CLRA does not apply to unfair or deceptive practices that occur *after*

20    the sale or lease has occurred. *See, e.g.*, *Durkee v. Ford Motor Co.*, No. 14-0617, 2014 WL

21    4352184, at \*3 (N.D. Cal. Sept. 2, 2014) ("[A] CLRA claim cannot be based on events following a

22    sales transaction."); *Hensley-Maclean v. Safeway, Inc.*, No. CV 11-02130, 2014 WL 1364906, at

23    \*6 (N.D. Cal. Apr. 7, 2014) ("[T]he CLRA only applies to representation and omissions that occur

24    during pre-sale transactions."); *Daugherty v. American Honda Motor Co., Inc.*, 144 Cal. App. 4th

25    824, 837 n.6 (Ct. App. 2006) ("In any event, those representations, such as they were, occurred in

26    2000 and 2001, not at the time of sale [nearly a decade earlier]."). Moreover, Plaintiff's UCL claim

27    relies on the same post-sale conduct and alleged CLRA violation. Insofar as Apple's allegedly

28    unfair or deceptive practices occurred *after* Plaintiff purchased her iPhone 4, Plaintiff cannot show

Case No.: 14-CV-02269-LHK
ORDER GRANTING IN PART AND DENYING IN PART MOTION TO DISMISS

1    that she "suffered economic injury as a result of [her] reliance" on Apple's conduct. *See In re*

2    *Tobacco II Cases*, 46 Cal. 4th at 326.

3         In opposition, Plaintiff argues that her "contractual purchase transaction" did not conclude

4    when she purchased her iPhone in March 2011. Opp. at 18–19. Instead, Plaintiff asserts that her

5    purchase of the iPhone included a contractual entitlement to all future software updates. This

6    entitlement apparently means that the Court should treat her download of iOS 5 in or after October

7    2011 as an extension of her March 2011 purchase. Under Plaintiff's novel theory, Plaintiff's sales

8    transaction is ongoing so long as Apple continues to release its free software updates. Plaintiff cites

9    no authority for the proposition that a sales transaction may last in perpetuity such that

10   representations made after a purchase occurs may trigger liability under the CLRA or UCL. To the

11   contrary, a court addressing a similar argument concluded that "Plaintiffs' original purchase of the

12   iPhone is a separate transaction from their free upgrade of the iPhone's operating system, which

13   occurred about a year later." *Wofford v. Apple, Inc.*, No. 11-0034, 2011 WL 5445054, at *2 (S.D.

14   Cal. Nov. 9, 2011). Plaintiff's reliance on *In re Sony PS3 Other OS Litig.*, 551 F. App'x 916 (9th

15   Cir. 2014), is misplaced. In *In re Sony*, the Ninth Circuit concluded the plaintiffs had stated a

16   viable claim under the CLRA because they "allege[d] that Sony's representations *at the time of*

17   *sale* mischaracterized the dual functionality [of the good] . . . and were likely to deceive members

18   of the public" because the subsequent, free software update restricted a material feature of the

19   good. *Id.* Here, in contrast, the subsequent, free iOS 5 software update did not vitiate a prior

20   material representation. Plaintiff does not allege that she relied on a representation at the time she

21   purchased her iPhone 4 that the subsequent iOS 5 software update abrogated.

22        Moreover, Plaintiff's argument is inconsistent with the actual reliance requirement. The

23   only "lost money or property" Plaintiff alleges as an economic injury is her purchase of the iPhone

24   4. *See* Cal. Bus. & Prof. Code § 17204. Apple's allegedly deceptive conduct consists of not

25   disclosing the text message delivery problem at the time it released iOS 5 and the Messages

26   application. Compl. ¶¶ 44, 48. To allow Plaintiff to allege that her "purchase" is an ongoing event

27   in order to make later occurring representations actionable would strain the causal relationship the

28   law requires. The Court concludes that Plaintiff's "contractual purchase transaction" theory does

11

Case No.: 14-CV-02269-LHK
ORDER GRANTING IN PART AND DENYING IN PART MOTION TO DISMISS

*(left margin, vertical text)* **United States District Court** For the Northern District of California

1    not negate the basic fact that Plaintiff decided to purchase, and did in fact purchase her iPhone and

2    its attendant privileges at least 7 months prior to Apple's alleged deceptive and unfair conduct.

3          Alternatively, Plaintiff contends for the first time in her opposition brief that Plaintiff's

4    download and use of iOS 5 can independently support a CLRA claim.[3] Plaintiff argues that Apple's

5    iOS 5 software license agreement omits material information. Opp. at 21. This theory of liability

6    appears nowhere in Plaintiff's Complaint. Plaintiff does not allege that she ever saw or relied on

7    the iOS 5 license agreement in choosing to update her iPhone 4's software. Moreover, the Court

8    finds that amendment would be futile. Even if Plaintiff had pled that she saw and relied on the

9    license agreement prior to downloading iOS 5, this new theory suffers from the same causal-

10   relationship problem discussed above. Plaintiff cannot contend that she purchased the iPhone 4,

11   and by extension the right to download iOS 5, in reliance on any misrepresentations or omissions

12   by Apple made at the time of sale. *See, e.g.*, *Kowalsky v. Hewlett-Packard Co.*, 771 F. Supp. 2d

13   1138, 1152 n. 7 (N.D. Cal. 2010), *vacated in part on other grounds by* 771 F. Supp. 2d 1156 (N.D.

14   Cal. 2011) ("[A] misrepresentation made . . . after Plaintiff purchased his printer would not support

15   liability under the CLRA . . . ."); *Harlan v. Roadtrek Motorhomes, Inc.*, No. 7-0686, 2009 WL

16   928309, at *17 (S.D. Cal. Apr. 2, 2009) (finding that a defendant's representations regarding

17   quality of repairs made after sale of vehicle cannot be basis of CLRA claim). Plaintiff cannot make

18   the fundamental allegation that she paid for her iPhone 4 at least in part because she relied on

19   Apple's representations regarding iMessages in the iOS 5 license agreement.

20         The Court therefore grants Defendant's motion to dismiss Plaintiff's CLRA claim. The

21   Court also grants Defendant's motion to dismiss Plaintiff's UCL claim that is predicated on the

22   CLRA claim's fraudulent conduct. These dismissals are with prejudice. The Court concludes that

23   amendment would be futile because Plaintiff cannot plead that she relied on alleged

24   misrepresentations and omissions regarding iMessages and the Messages application that did not

25

26

---

27   [3] Defendant argues that iOS 5, as software, is not a "good" or "service" covered by the CLRA, and
     that iOS 5 was provided free of charge and therefore cannot be a "sale or lease." MTD at 15–16. In
     light of the Court's conclusion that Plaintiff cannot plead a set of facts showing actual reliance
28   here, the Court declines to reach these additional arguments.

12

Case No.: 14-CV-02269-LHK
ORDER GRANTING IN PART AND DENYING IN PART MOTION TO DISMISS

1    exist at the time she purchased her iPhone. *See Lopez*, 203 F.3d at 1130; *Leadsinger*, 512 F.3d at

2    532; *Weisbuch*, 119 F.3d at 783 n.1.

3         **C.    Tortious Interference with Contract**

4         Before turning to Plaintiff's remaining UCL claims, the Court first addresses Plaintiff's

5    other substantive cause of action: tortious interference with contract. Defendant contends that

6    Plaintiff has failed to sufficiently allege facts supporting her tortious interference with contract

7    claim. Under California law, a claim for tortious interference with contract requires "(1) a valid

8    contract between plaintiff and a third party; (2) defendant's knowledge of this contract; (3)

9    defendant's intentional acts designed to induce a breach or disruption of the contractual

10   relationship; (4) actual breach or disruption of the contractual relationship; and (5) resulting

11   damage." *Piping Rock Partners, Inc. v. David Lerner Assocs., Inc.*, 946 F. Supp. 2d 957, 979 (N.D.

12   Cal. 2013) (quoting *Quelimane Co. v. Stewart Title Guaranty Co.*, 960 P.2d 513, 530 (Cal. 1998)).

13   Here, the Court finds that Plaintiff has alleged "enough facts to state a claim to relief that is

14   plausible on its face." *Twombly*, 550 U.S. at 570.

15        First, Plaintiff alleges the existence of a valid agreement between herself and Verizon

16   Wireless, that she pays monthly fees and charges for wireless service, and that the service includes

17   the right to send and receive text messages. Compl. ¶ 36. Defendant contends that Plaintiff must

18   identify a specific contract term or language. However, the cases Defendant cites do not support

19   such a heightened burden. In *Image Online Design, Inc. v. Internet Corp. for Assigned Names &*

20   *Numbers*, No. 12-08968, 2013 WL 489899, at *8–9 (C.D. Cal. Feb. 7, 2013), the plaintiff had

21   made "claims of generalized disruption of contracts." Under those circumstances, the Court

22   concluded that the plaintiff had to "allege actual interference with actual contracts, such that the

23   result is a specific breach, not merely general damage to the business." *Id.* Here, unlike in *Image*

24   *Online Design*, Plaintiff has identified a valid existing contract with Verizon Wireless and the

25   contractual duty at issue: sending and receiving text messages. This also distinguishes Plaintiff's

26   allegations from *Wofford v. Apple*, where the plaintiffs failed to "identify the specific obligations

27   that were breached." 2011 WL 5445054, at *3. *See also Hartford Life Ins. Co. v. Banks*, No.

28   08cv1279, 2009 WL 863267, at *6 (S.D. Cal. Mar. 25, 2009). These factual allegations are

13

Case No.: 14-CV-02269-LHK
ORDER GRANTING IN PART AND DENYING IN PART MOTION TO DISMISS

**United States District Court**
For the Northern District of California

**United States District Court**
For the Northern District of California

1    sufficient at the pleading stage. *See Catch Curve v. Venali, Inc.*, 519 F. Supp. 2d 1028, 1039 (C.D.

2    Cal. 2007).

3    　　　Second, Plaintiff has sufficiently alleged Apple's knowledge of her contract with Verizon

4    Wireless. Plaintiff alleges that Apple knew about her wireless service contract because Verizon

5    Wireless and other wireless providers update subscribers' wireless accounts when users switch

6    from Apple to non-Apple devices. Compl. ¶ 38. Furthermore, Plaintiff alleges that she informed

7    Apple she had switched to a non-Apple device and was not receiving text messages from Apple

8    users. *Id.* ¶¶ 20–21. Defendant may contest whether the wireless providers' update or Plaintiff's

9    contact with Apple personnel actually conveyed the relevant information to Apple, but Plaintiff has

10   alleged sufficient facts supporting the reasonable inference that Apple was aware of Plaintiff's

11   contract with Verizon, and that it included the right to send and receive text messages. *See Cousins

12   v. Lockyer*, 568 F.3d 1063, 1067 (9th Cir. 2009).

13   　　　Third, Plaintiff alleges that Apple, as designer of the Messages application, knew that use

14   of iMessages would result in undelivered text messages if a user switched to a non-Apple device.

15   Compl. ¶ 16. Defendant argues that Plaintiff's claim is implausible because Apple relies on

16   services provided by wireless service providers, and "has no interest in inducing a breach . . . of the

17   . . . relationship that provides an important functionality for its mobile phones." MTD at 19.

18   However, "intentional acts" do not require that the defendant's primary motive be to disrupt a

19   contract. This element can also be satisfied if "the actor does not act for the purpose of interfering

20   with the contract or desire it but knows that the interference is certain or substantially certain to

21   occur as a result of his [or her] action." *Quelimane*, 960 P.2d at 531. Plaintiff alleges that Apple

22   knew its users "are likely to be disincentivized from switching from Apple to an Apple

23   competitor," if switching would result in undelivered messages. Compl. ¶ 49. According to

24   Plaintiff, Apple knew about the undelivered messages problem, her contractual right to send and

25   receive text messages, and still knowingly failed to alert her. Accepting these allegations as true

26   and "constru[ing] the pleadings in the light most favorable" to Plaintiff, the Court concludes

27   Plaintiff has sufficiently pled that Apple intentionally acted to disrupt or breach Plaintiff's contract

28   with Verizon Wireless. *See Manzarek*, 519 F.3d at 1031.

14

Case No.: 14-CV-02269-LHK
ORDER GRANTING IN PART AND DENYING IN PART MOTION TO DISMISS

**United States District Court**
For the Northern District of California

1          Fourth, Defendant argues that Plaintiff has failed to allege a "specific breach" of the

2    contract. According to Defendant, because Plaintiff does not allege a guaranteed right to receive

3    every text message sent to her, there can be no specific breach of the contract. MTD at 18. As an

4    initial matter, the Court notes that Defendant's argument goes to the truth of Plaintiff's allegations

5    rather than their sufficiency. Plaintiff has alleged that she is entitled to send and receive text

6    messages under her wireless service agreement. Taking Plaintiff's allegations as true, Apple's

7    Messages application prevents Plaintiff from receiving text messages, a service for which Plaintiff

8    pays as part of her wireless service contract. Plaintiff does not have to allege an absolute right to

9    receive every text message in order to allege that Apple's intentional acts have caused an "actual

10   breach or disruption of the contractual relationship." *See Piping Rock Partners*, 946 F. Supp. 2d at

11   979. Defendant cites no authority for the proposition that a contract must guarantee performance to

12   support a tortious interference claim. To the contrary, California courts addressing the scope of this

13   tort have broadly concluded that "it is the contractual relationship, not any term of the contract,

14   which is protected against outside interference." *See Pacific Gas & Elec. Co. v. Bear Stearns &*

15   *Co.*, 791 P.2d 587, 590–91 (Cal. 1990). Plaintiff has alleged an actual breach or disruption of her

16   entitlement to receive text messages addressed to her.

17         Construing Plaintiff's allegations in the light most favorable to the Plaintiff, the Court

18   concludes that Plaintiff has alleged sufficient facts to state a plausible claim for tortious

19   interference with contract.

20         **D.       Remaining UCL Claims**

21         The Court now turns to the remaining UCL claims that do not rely on Plaintiff's CLRA

22   claim or any allegations of fraudulent conduct. Plaintiff alleges two additional UCL claims: an

23   unlawful business practice claim based on tortious interference with contract and an unfair business

24   practice claim based on alleged harm to competition. Defendant contends Plaintiff has failed to

25   adequately plead both claims.

26         California's UCL provides a cause of action for business practices that are (1) unlawful, (2)

27   unfair, or (3) fraudulent. Cal. Bus. & Prof. Code § 17200. The UCL's coverage is "sweeping," and

28   its standard for wrongful business conduct "intentionally broad." *In re First Alliance Mortg. Co.*,

15

Case No.: 14-CV-02269-LHK
ORDER GRANTING IN PART AND DENYING IN PART MOTION TO DISMISS

1   471 F.3d 977, 995 (9th Cir. 2006) (citing *Cel-Tech Commc'ns., Inc. v. L.A. Cellular Tel. Co.*, 20

2   Cal. 4th 163 (1999)). The unlawful prong of the UCL "borrows violations of other laws and treats

3   them as unlawful practices," which the UCL then "makes independently actionable." *Cel-Tech*

4   *Commc'ns, Inc.*, 20 Cal. 4th at 180 (internal quotation marks and citations omitted). To support her

5   theory of liability under the UCL's unlawful prong, Plaintiff relies upon Defendant's alleged

6   violation of the CLRA and tortious interference with contract. Compl. ¶ 48. A business practice

7   violates the unfair prong of the UCL if it is contrary to "established public policy or if it is

8   immoral, unethical, oppressive or unscrupulous and causes injury to consumers which outweighs

9   its benefits." *McKell v. Wash. Mut., Inc.*, 142 Cal. App. 4th 1457, 1473 (2006). In determining

10  whether a business practice is unfair under this approach, California courts balance the "impact on

11  its alleged victim" against "the reasons, justifications, and motives of the alleged wrongdoer." *Id.*[4]

12          First, Plaintiff has alleged a cognizable UCL claim based on Plaintiff's tortious interference

13  with contract claim. *See CRST Van Expedited, Inc. v. Werner Enterprises, Inc.*, 479 F.3d 1099,

14  1107 (9th Cir. 2007) (holding that allegations of tortious interference with contract adequately

15  alleged violation of UCL). Defendant's 12 (b)(6) argument relies solely on the viability of

16  Plaintiff's tortious interference claim. As discussed above, Plaintiff has sufficiently pled a tortious

17  interference with contract claim. There is direct Ninth Circuit precedent finding that a tortious

18  interference with contract claim can serve as a predicate "unlawful" business practice for UCL

19  purposes. *See id.* In the absence of any contravening California authority, the Court finds that

20  Plaintiff has sufficiently alleged an "unlawful" business practice UCL claim based on tortious

21  interference with contract.

22          Second, Defendant contends Plaintiff's unfair business practice claim does not meet either

23  test for determining actionable "unfairness" under California law. MTD at 14–15. Plaintiff fails to

24  address her unfair business practice UCL claim in her opposition to Defendant's motion to dismiss.

25  Such a failure in an opposition brief constitutes abandonment of the claim. *Qureshi v. Countrywide*

26  _____

27  [4] The "proper definition of 'unfair' conduct against consumers is 'currently in flux' among
    California courts," and some appellate opinions have applied a more stringent test, particularly for
    conduct that threatens an incipient violation of antitrust law. *Davis v. HSBC Bank Nevada, N.A.*,

28  691 F.3d 1152, 1169 (9th Cir. 2012).

16

Case No.: 14-CV-02269-LHK
ORDER GRANTING IN PART AND DENYING IN PART MOTION TO DISMISS

*Home Loans, Inc.*, No. 09–4198, 2010 WL 841669, at *6 n.2 (N.D. Cal. Mar. 10, 2010); *In re TFT-LCD (Flat Panel) Antitrust Litig.*, 568 F. Supp. 2d 1109, 1131 (N.D. Cal. 2008). Moreover, where a plaintiff "simply fails to address a particular claim in its opposition to a motion to dismiss that claim, courts generally dismiss it with prejudice." *Homsy v. Bank of Am., N.A.*, No. 13-01608, 2013 WL 2422781, at *5 (N.D. Cal. June 3, 2013) (citing *In re Hulu Privacy Litig.*, No. C 11-03764, 2012 WL 2119193, at *3 (N.D. Cal. June 11, 2012)); *see also Green Desert Oil Grp. v. BP W. Coast Prods.*, No. 11-02087 CRB, 2012 WL 555045, at *2 (N.D. Cal. Feb. 21, 2012) (dismissing abandoned claims without leave to amend). The Court therefore dismisses Plaintiff's unfair business practice UCL claim with prejudice.

In summary, the Court denies Defendant's motion to dismiss Plaintiff's unlawful business practice UCL claim based on Plaintiff's tortious interference with contract claim. The Court grants Defendant's motion to dismiss Plaintiff's unfair business practice UCL claim with prejudice.

## IV.     CONCLUSION

For the reasons discussed above, the Court GRANTS with prejudice Defendant's motion to dismiss Plaintiff's CLRA claim and UCL claim predicated on the CLRA claim. The Court DENIES Defendant's motion to dismiss Plaintiff's tortious interference with contract claim and UCL claim predicated on the tortious interference claim. The Court GRANTS with prejudice Defendant's motion to dismiss Plaintiff's UCL claim based on unfair business practices.

**IT IS SO ORDERED.**

Dated:          November 10, 2014                    _____

LUCY H. KOH
United States District Judge

United States District Court
For the Northern District of California

17

Case No.: 14-CV-02269-LHK
ORDER GRANTING IN PART AND DENYING IN PART MOTION TO DISMISS