1   DAVID M. WALSH (CA SBN 120761)
    DWalsh@mofo.com
2   KAI S. BARTOLOMEO (CA SBN 264033)
    KBartolomeo@mofo.com
3   MORRISON & FOERSTER LLP
    707 Wilshire Boulevard
4   Los Angeles, California  90017-3543
    Telephone: 213.892.5200
5   Facsimile: 213.892.5454

6   TIFFANY CHEUNG (CA SBN 211497)
    TCheung@mofo.com
7   MORRISON & FOERSTER LLP
    425 Market Street
8   San Francisco, California  94105-2482
    Telephone:  415.268.7000
9   Facsimile:  415.268.7522

10  Attorneys for Defendant
    APPLE INC.

11

12                  UNITED STATES DISTRICT COURT

13              NORTHERN DISTRICT OF CALIFORNIA

14                      SAN JOSE DIVISION

15

16  ADRIENNE MOORE, On Behalf of Herself and    Case No.    5:14-cv-02269 LHK
    All Others Similarly Situated,
17                                               **DEFENDANT APPLE INC.'S**
                        Plaintiff,               **OPPOSITION TO PLAINTIFF**
18                                               **ADRIENNE MOORE'S MOTION**
            v.                                   **FOR CLASS CERTIFICATION**
19
    APPLE INC.,                                  Date:     July 30, 2015
20                                               Time:     1:30 p.m.
                        Defendant.               Ctrm:     8 — 4th Floor
21                                               Judge:    Hon. Lucy H. Koh

22                                               Complaint Filed:   May 15, 2014
                                                 Trial Date:        May 9, 2016
23

24

25

26

27

28

# TABLE OF CONTENTS

Page

I. INTRODUCTION ................................................................................................... 1

II. RELEVANT BACKGROUND ............................................................................... 2

   A. What is iMessage ........................................................................................ 2

   B. Deregistering from iMessage ..................................................................... 2

   C. Plaintiff's Atypical Experience .................................................................. 4

      1. Plaintiff Cannot Prove that She Did Not Receive A Single Text Message .......................................................................................... 4

      2. Plaintiff Has Not Produced her Wireless Services Contract and Cannot Identify Specific Terms of Her Wireless Services Contract That She Claims Were Breached ................................................... 5

III. LEGAL STANDARD ............................................................................................ 6

IV. ARGUMENT ......................................................................................................... 6

   A. Plaintiff Lacks Standing .............................................................................. 6

   B. The Proposed Class Includes Members Who Lack Standing ..................... 8

   C. Plaintiff's Class is Not Ascertainable ...................................................... 10

   D. Class Certification Should Be Denied Because Plaintiff Has Not Demonstrated The Existence or Predominance of Common Issues Required Under Subsection (b)(3) ........................................................................... 11

      1. Courts Routinely Deny Certification of Intentional Interference Claims Due to the Predominance of Individualized Issues .................. 12

      2. Differences in Individual Carrier Contracts Defeat Commonality and Predominance. ........................................................................... 12

      3. Individualized Inquiries Regarding Whether Each Class Member Failed to Receive a Text Message Defeat Commonality and Predominance. ................................................................................. 14

         a. The Court Must Evaluate Each Class Member's Efforts to Deregister. .............................................................................. 14

         b. The Court Must Evaluate the Impact of Back-End Deregistration Processes on Each Class Member. ..................... 15

         c. The Court Must Evaluate the Settings on Each Sender's Device. .................................................................................... 16

         d. Plaintiff Proposes No Common Method for Identifying Individuals Impacted by the Alleged Interference. .................. 16

      4. Individualized Inquiries Regarding The Cause of Any Failed Messages Defeat Commonality and Predominance. ......................... 19

      5. Plaintiff's Damages Theory Is Inappropriate for a Tortious Interference Claim and Cannot Apply to the Class ............................ 21

      6. Plaintiff Does Not Explain Why California Tort Law Should Apply to the Claims of a Nationwide Class ............................................... 24

Apple's Opp. to Mot. for Class Cert.
Case No. 5:14-cv-02269 LHK

i

1

**TABLE OF CONTENTS**
**(continued)**

2

Page

3     E.    Plaintiff's Claims Are Not Typical of the Class ................................................... 24

4     F.    Plaintiff's UCL Claim is Derivative of Her Claim for Tortious Interference,
            and Certification Should be Denied for the Same Reasons ................................. 25

5  V.    CONCLUSION .......................................................................................................... 25

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

# TABLE OF AUTHORITIES

**Page(s)**

CASES

*Amchem Prods., Inc. v. Windsor,*
  521 U.S. 591 (1997) ........................................................................................... 6

*Arango v. Work & Well, Inc.,*
  No. 11 C 1525, 2012 WL 3023338 (N.D. Ill. July 24, 2012) ................................. 12

*Brazil v. Dole Packaged Foods, LLC,*
  No. 12-CV-01831-LHK, 2014 WL 2466559 (N.D. Cal. May 30, 2014) ............................. 22

*Bruton v. Gerber Prods. Co.,*
  No. 12-CV-02412-LHK, 2014 WL 2860995 (N.D. Cal. June 23, 2014) ....................... 17, 18

*Campusano v. BAC Home Loans Servicing LP,*
  No. CV 11-4609 PSG, 2013 WL 2302676 (C.D. Cal. Apr. 29, 2013) ................................. 13

*Christiana Mortg. Corp. v. Del. Mortg. Bankers Ass'n,*
  136 F.R.D. 372 (D. Del. 1991) ............................................................................. 12

*Church v. Consol. Freightways, Inc.,*
  No. C-90-2290 DLJ, 1991 WL 284083 (N.D. Cal. June 14, 1991) ....................................... 14

*CLN Props., Inc. v. Republic Servs., Inc.,*
  No. CV-09-1428-PHX-DGC, 2010 WL 5146734 (D. Ariz. Dec. 13, 2010) ........................ 13

*Comcast Corp v. Behrend,*
  133 S. Ct. 1426 (2013) ............................................................................. 6, 7, 21, 23

*Conn. Cooling Total Air, Inc. v. Conn. Natural Gas Corp.,*
  738 A.2d 1167 (Conn. Super. Ct. 1999) ............................................................... 12

*Davis v. Cintas Corp.,*
  717 F.3d 476 (6th Cir. 2013).............................................................................. 24

*Deitz v. Comcast Corp.,*
  No. C 06-06352 WHA, 2007 WL 2015440 (N.D. Cal. July 11, 2007) ................................. 11

*Dioquino v. Sempris, LLC,*
  No. CV 11-05556 SJO, 2012 WL 6742528 (C.D. Cal. Apr. 9, 2012) ................................... 11

*Espenscheid v. DirectSat USA, LLC,*
  705 F.3d 770 (7th Cir. 2013)............................................................................. 24

*Evans v. Linden Research, Inc.,*
  No. C 11-1078 DMR, 2012 WL 5877579 (N.D. Cal. Nov. 20, 2012)..................................... 7

Apple's Opp. to Mot. for Class Cert.
Case No. 5:14-cv-02269 LHK

iii

1

**TABLE OF AUTHORITIES**
(continued)

2

Page(s)

3

*Family Home & Fin. Ctr., Inc. v. Fed. Home Loan Mortg. Corp.*,

4

525 F.3d 822 (9th Cir. 2008).............................................................................. 21

5

*Franklin v. Dynamic Details, Inc.*,
116 Cal. App. 4th 375 (2004) ............................................................................ 19

6

*Gibson v. Credit Suisse AG*,

7

No. CV 10-1-EJL-REB, 2013 WL 5375648 (D. Idaho Aug. 16, 2013) .................... 12, 13, 19

8

*Gonzalez v. Comcast Corp.*,
No. 10-cv-01010-LJO-BAM, 2012 WL 10621 (E.D. Cal. Jan. 3, 2012).............. 18

9

10

*Hanon v. Dataproducts Corp.*,
976 F.2d 497 (9th Cir. 1992)............................................................................... 25

11

*Hayes v. Wal-Mart Stores, Inc.*,

12

725 F.3d 349 (3d Cir. 2013)................................................................................ 18

13

*Herskowitz v. Apple, Inc.*,
301 F.R.D. 460 (N.D. Cal. 2014)........................................................................ 12

14

15

*Hovsepian v. Apple, Inc.*,
No. 08-5788 JF (PVT), 2009 WL 5069144 (N.D. Cal. Dec. 17, 2009)............... 10

16

*In re Cathode Ray Tube (CRT) Antitrust Litig.*,

17

No. C-07-5944-SC, 2013 WL 5391159 (N.D. Cal. Sept. 24, 2013)...................... 8

18

*In re Flash Memory Antitrust Litig.*,
No. C 07-0086 SBA, 2010 WL 2332081 (N.D. Cal. June 9, 2010) ..................... 11

19

*In re Graphics Processing Units Antitrust Litig.*,

20

253 F.R.D. 478 (N.D. Cal. 2008)......................................................................... 6

21

*In re Hotel Tel. Charges*,

22

500 F.2d 86 (9th Cir. 1974)................................................................................. 6

23

*In re Paxil Litig.*,
212 F.R.D. 539 (C.D. Cal. 2003) ....................................................................... 21

24

*In re Sch. Asbestos Litig.*,

25

977 F.2d 764 (3d Cir. 1992)............................................................................... 24

26

*In re Yahoo Mail Litig.*,

27

---F. Supp. 3d ---, No. 13-CV-04980-LHK,
2015 WL 3523908 (N.D. Cal. May 26, 2015) ................................................... 24

28

Apple's Opp. to Mot. for Class Cert.
Case No. 5:14-cv-02269 LHK

iv

1

**TABLE OF AUTHORITIES**
(continued)

2

Page(s)

3

*Jimenez v. Allstate Ins. Co.*,
4
   No. 12-56112, 2014 WL 4338841 (9th Cir. Sept. 3, 2014) ............................................. 21, 23

5
*Jones v. ConAgra Foods, Inc.*,
   No. C 12-01633 CRB, 2014 WL 2702726 (N.D. Cal. June 13, 2014) ................................. 18

6
*Kane v. Chobani, Inc.*,
7
   973 F. Supp. 2d 1120 (N.D. Cal. 2014) ................................................................................ 7

8
*Klaxon Co. v. Stentor Elec. Mfg. Co.*,
9
   313 U.S. 487 (1941)............................................................................................................ 24

10
*Kohen v. Pac. Inv. Mgmt. Co. LLC*,
   571 F.3d 672 (7th Cir. 2009).................................................................................................. 8

11
*Levya v. Medline Indus. Inc.*,
12
   716 F.3d 510 (9th Cir. 2013)................................................................................................ 21

13
*Lujan v. Defenders of Wildlife*,
14
   504 U.S. 555 (1992).............................................................................................................. 7

15
*Martinez v. Welk Group, Inc.*,
   No. 09cv2883 AJB, 2012 WL 2888536 (S.D. Cal. July 13, 2012)...................................... 13

16
*Mazur v. eBay*,
17
   257 F.R.D. 563 (N.D. Cal. 2009) .......................................................................................... 8

18
*Mazza. Fox v. Riverview Realty Partners*,
   No. 12 C 9350, 2014 WL 1613022 (N.D. Ill. Apr. 22, 2014).............................................. 8

19
*Mazza v. Am. Honda Motor. Co.*,
20
   666 F.3d 581 (9th Cir. 2012)........................................................................................... 8, 24

21
*Moore v. Apple Inc.*,
22
   No. 14–CV–02269–LHK, 2014 WL 5830374 (N.D. Cal. Nov. 10, 2014)........................... 20

23
*Native Village of Kivalina v. ExxonMobil Corp.*,
   696 F.3d 849 (9th Cir. 2012).................................................................................................. 7

24
*O'Shea v. Epson Am., Inc.*,
25
   No. CV 09-8063 PSG, 2011 WL 4352458 (C.D. Cal. Sept. 19, 2011) ............................ 9, 10

26
*Parker v. Bank of Am., N.A.*,
27
   ---F.Supp. 3d---, No. 11-CV-0520 (KBJ),
   2015 WL 1737278 (D.D.C. Apr. 16, 2015) ........................................................................ 13

28

Apple's Opp. to Mot. for Class Cert.
Case No. 5:14-cv-02269 LHK

v

**TABLE OF AUTHORITIES**
(continued)

**Page(s)**

*Peltier Enterprises, Inc. v. Hilton,*
   51 S.W.3d 616 (Tex. App. 2000) ........................................................................ 12

*Phillips Petroleum Co. v. Shutts,*
   472 U.S. 797, 105 S. Ct. 2965, 86 L. Ed. 2d 628 (1985) ....................................... 24

*Piping Rock Partners, Inc. v. David Lerner Assocs., Inc.,*
   946 F. Supp. 2d 957 (N.D. Cal. 2013) ............................................................... 9, 13

*Poulos v. Caesars World, Inc.,*
   379 F.3d 654 (9th Cir. 2004) .............................................................................. 19

*Pritikin v. Dep't of Energy,*
   254 F.3d 791 (9th Cir. 2001) ................................................................................. 7

*Reed v. Advocate Health Care,*
   268 F.R.D. 573 (N.D. Ill. 2009) ............................................................................ 6

*Renee v. Duncan,*
   623 F.3d 787 (9th Cir. 2010) .............................................................................. 10

*Roth v. CHA Hollywood Med. Ctr., L.P.,*
   No. 2:12-CV-07559-ODW, 2013 WL 5775129 (C.D. Cal. Oct. 25, 2013) ........... 25

*Sanders v. Apple Inc.,*
   672 F. Supp. 2d 978 (N.D. Cal. 2009) .................................................................. 8

*Tietsworth v. Sears, Roebuck & Co.,*
   No. 5:09-cv-00288-JF (HRL), 2012 WL 1595112 (N.D. Cal. May 4, 2012) ..... 8, 10

*Wal-Mart Stores, Inc. v. Dukes,*
   131 S. Ct. 2541 (2011) ............................................................................... passim

*Werdebaugh v. Blue Diamond Growers,*
   No. 12-CV-02724-LHK, 2014 WL 7148923 (N.D. Cal. Dec. 15, 2014) ............... 22

*Xavier v. Philip Morris USA Inc.,*
   787 F. Supp. 2d 1075 (N.D. Cal. 2011) .......................................................... 11, 17

*Zinser v. Accufix Research Inst., Inc.,*
   253 F.3d 1180 (9th Cir. 2001) ............................................................................ 12

**RULES**

Fed. R. Civ. P. 23 ...................................................................................................... 6

Apple's Opp. to Mot. for Class Cert.
Case No. 5:14-cv-02269 LHK

vi

**TABLE OF AUTHORITIES**
(continued)

Page(s)

Fed. R. Civ. P. 23(a) ............................................................................................... 6, 11, 25

Fed. R. Civ. P. 23(a)(3) ............................................................................................... 25

Fed. R. Civ. P. 23(b) ............................................................................................... passim

**STATUTES**

Cal. Bus. & Prof. Code § 17204 ...................................................................................... 7

**OTHER AUTHORITIES**

Restatement (Second) of Torts § 774A (1979) ............................................................ 22

Apple's Opp. to Mot. for Class Cert.
Case No. 5:14-cv-02269 LHK

vii

## I.   INTRODUCTION

Every day, tens of millions of wireless subscribers in the United States exchange billions of text messages.  Many of those messages get delivered.  Others do not.  The reasons why are as many and varied as the users themselves — location, signal quality, carrier architecture, device issues, and user error can each impact, or prevent, the delivery of any given message.  Plaintiff Adrienne Moore asks the Court to ignore these individual factors and certify a class consisting of every single former Apple iPhone/iMessage user in the United States who switched from an Apple device to a non-Apple device within the past 4 years.  Plaintiff claims that Apple's free iMessage service prevented these putative class members from receiving text messages from current Apple users, thereby interfering with the class members' individual contracts with one of the dozens of wireless service providers to which they subscribe.

Plaintiff's class cannot be certified because individualized issues predominate.  Each class member will have to submit extensive individualized proof.  Specifically, each class member must prove at least that:

(1) her iPhone was iMessage-enabled;

(2) she transferred her iPhone phone number to a non-Apple device;

(3) she did not take the necessary steps to deregister her phone number from iMessage, or that her attempted deregistration did not work;

(4) Apple's iMessage system did not deregister her automatically;

(5) her wireless contract included text messaging;

(6) someone sent her a text message from an iMessage-enabled Apple device;

(7) she did not receive that text message;

(8) she did not receive the message *because of* Apple's iMessage system; and

(9) she suffered some harm as a result.

Plaintiff does not explain how she will overcome these individualized issues.  Instead, she proposes to sweep aside all of these fact requirements by simply presuming that every class member was "subject to" the potential loss of text messages, regardless of whether that class member actually suffered any injury.  "Subject to" does not equate to tortious interference with

1    contract. Plaintiff's damages model does not match the damages she claims, either. Plaintiff

2    asserts that the class has been injured because Apple allegedly interfered with millions and

3    millions of individual wireless services contracts. ███████████████████

4    ████████████████████████████████████████████████████████████████

5    ████████████████████████████████ Her damages expert makes many

6    assumptions and presumptions but does not address the damages she actually claims. Plaintiff's

7    motion for class certification should be denied.

8        II.    **RELEVANT BACKGROUND**

9            A.    **What Is iMessage**

10           Apple introduced a revolutionary system for transmitting brief messages through mobile

11   devices when it launched iMessage in October 2011. iMessage is free. The conventional text

12   messaging services available at that time enabled the customer to send and receive messages for a

13   set fee or a charge for each message sent. Conventional text messages are transmitted using the

14   architecture of the wireless carriers.

15           Apple created something completely different with iMessage. To provide its customers

16   cost savings and other benefits, Apple developed its own *proprietary architecture* for transmitting

17   text messages through its own servers. Because iMessages must be routed through Apple's

18   systems, iMessages can be transmitted only between Apple devices. So, text messages sent to

19   non-Apple devices are routed through the conventional wireless carrier system. A receiving

20   device is iMessageable after that device's phone number is "registered" with the iMessage

21   registration server. Notifications appear on Apple devices to inform customers when their text

22   messages are sent through iMessage. iMessages appear in blue bubbles; texts sent to non-Apple

23   devices (conventional SMS text messages) appear on the iPhone screen in green. If, at any time,

24   an iPhone user wants to turn off her free iMessage system, all she has to do is toggle off the

25   iMessage setting on her iPhone.

26           B.    **Deregistering From iMessage**

27           Apple has enabled deregistration from iMessage since it introduced the service. Apple

28   does several things to make sure that that those who did not want to use, or could no longer use,

APPLE'S OPP. TO MOT. FOR CLASS CERT.
Case No. 5:14-cv-02269 LHK                                                                    2
la-1289121

1   iMessage are deregistered from Apple's iMessage service.[1]   After a customer's phone number is

2   deregistered, text messages sent by that phone number will attempt to be sent as SMS messages

3   (outside of the iMessage service).

4   • **Users have always been able to switch the iMessage service off on their iPhones.**

5   (Cheung Decl. ¶6, Ex. 4, 96:21-97:14; ¶7, Ex. 5, 44:15-45:5.)  For years, Apple *publicly*

6   posted on its website that users should turn off iMessage before switching to a non-Apple

7   device.  (*Id*. ¶7, Ex. 5, 41:21-42:18, 51:9-52:2, 75:7-76:24, 100:13-101:4.)  Otherwise,

8   contacts could continue to send iMessages to former Apple users for up to 45 days.  (*Id*.

9   ¶7, Ex. 5, 101:8-102:4; Katriel Decl. in Supp. of Pltf's Mot. For Class Cert., Ex. 14 at 2.)

10

11

12

13

14

15

16

17

18

19

20

21   • **iPhone users could erase all contents and settings to deregister the iPhone.**  (*Id*.,

22   _____

    [1] According to Plaintiff's motion, Apple sat idly by for years while iMessage
23   systematically prevented the delivery of text messages to former users.  Nothing could be further
    from the truth.  As the contemporaneous emails — emails Plaintiff excluded from her motion —
24   make clear, Apple was vigilant and quick to react to any issues raised by current and former
    iPhone users relating to iMessage registration.

25

26

27   Apple's work did not stop there.  As detailed in this opposition, Apple's deregistration protocols
    constantly evolved and improved.  Far from neglecting any iMessage deregistration issues that
    arose, Apple devoted great time and energy to addressing and preventing them.
28

1    96:21-24, 198:21-199:12.)

2    • **Apple created a tool for AppleCare representatives to deregister phone numbers**

3    **from iMessage at a user's request**. (*Id.* ¶7, Ex. 5, 41:21-42:25.) Apple also worked to

4    ensure that calls customers placed to cellular carriers about this issue were forwarded to

5    AppleCare representatives, who then deregistered customers. (*Id.*)

6

7

8

9

10

11    • **In November 2014, Apple released a public-facing, self-service deregistration page.**

12    (*Id.* ¶7, Ex. 5, 44:12-46:3.) This webpage allows users to deregister their current or

13    former iPhone from iMessage through a simple process. (*Id.*; ¶6, Ex. 4, 95:25-96:14.)

14          **C.    Plaintiff's Atypical Experience**

15    Plaintiff owned an iPhone 4 "[f]or years pre-dating the filing of this action." (Compl.

16    ¶ 5.) Plaintiff alleges that she began having problems after "she decided to replace her Apple

17    iPhone 4 device with a Samsung Galaxy S5, as she did on or about April 16, 2014." (*Id.*) At that

18    point, she claims that iMessage and the Messages application "acted so as not to deliver incoming

19    texts messages sent to her by Apple device users to her same cellular telephone number, [which]

20    was now associated with a non-Apple device." (*Id.*)

21          **1.    Plaintiff Cannot Prove That She "Lost" A Single Text Message**

22

23

24

25

26

27

28

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20   **2.   Plaintiff Has Not Produced Her Wireless Services Contract**
          **And Cannot Identify Specific Terms of Her Wireless Services**
21        **Contract That She Claims Were Breached**

22

23

24

25

26

27

28

1

## III.   LEGAL STANDARD

2   Class actions are an "exception to the usual rule that litigation is conducted by and on

3   behalf of the individual named parties only." *Wal-Mart Stores, Inc. v. Dukes*, 131 S. Ct. 2541,

4   2550 (2011).  A plaintiff seeking to maintain a class action must show that class treatment is

5   appropriate — not by relying on the pleadings but through actual proof.  *Comcast Corp v.*

6   *Behrend*, 133 S. Ct. 1426, 1432 (2013); *Wal-Mart*, 131 S. Ct. at 2551-52.  The plaintiff must "'be

7   prepared to prove that there are *in fact* sufficiently numerous parties, common questions of law or

8   fact,' typicality of claims or defenses, and adequacy of representation, as required by Rule 23(a)."

9   *Comcast*, 133 S. Ct. at 1432, quoting *Wal-Mart*, 131 S. Ct. at 2551-52.  In addition, she must

10  "satisfy through evidentiary proof at least one of the provisions of Rule 23(b)." *Comcast*, 133 S.

11  Ct. at 1432, quoting *Wal-Mart*, 131 S. Ct. at 2551-52.

12  Where, as here, the Plaintiff seeks certification under Rule 23(b)(3), any common

13  questions must predominate over the individualized ones, a "criterion" that is "far more

14  demanding" than establishing a single common question under Rule 23(a).  *Amchem Prods., Inc.*

15  *v. Windsor*, 521 U.S. 591, 624 (1997).  A plaintiff cannot satisfy his or her burden with

16  "promises," *In re Graphics Processing Units Antitrust Litig.*, 253 F.R.D. 478, 506-07 (N.D. Cal.

17  2008), to "provide solutions" to prevent the "individual issues from splintering the action."  *In re*

18  *Hotel Tel. Charges*, 500 F.2d 86, 90 (9th Cir. 1974).  The plaintiff's method of class-wide proof

19  must "work"; being merely "workable" is not enough.  *Reed v. Advocate Health Care*, 268 F.R.D.

20  573, 593 (N.D. Ill. 2009).  To that end, class certification requires "convincing proof" that Rule

21  23 is actually satisfied.  *Wal-Mart*, 131 S. Ct. at 2551, 2556.

22  ## IV.   ARGUMENT

23  ### A.   Plaintiff Lacks Standing

24  As a threshold matter, Plaintiff's claims cannot proceed on a class basis because Plaintiff

25  herself lacks standing.  Article III standing to sue requires a plaintiff show "(1) an injury-in-fact

26  that is concrete and particularized, as well as actual or imminent; (2) that the injury is fairly

27  traceable to the challenged action of the defendant; and (3) that the injury is redressable by a

28  favorable ruling." *Kane v. Chobani, Inc.*, 973 F. Supp. 2d 1120, 1128 (N.D. Cal. 2014).

1    Standing under the UCL requires the plaintiff to show that she "has suffered injury in fact and has

2    lost money or property as a result of the unfair competition."  Cal. Bus. & Prof. Code § 17204.

3            Because the elements of Article III standing "are not mere pleading requirements but

4    rather an indispensable part of the plaintiff's case, each element must be supported in the same

5    way as any other matter on which the plaintiff bears the burden of proof, i.e., with the manner and

6    degree of evidence required at the successive stages of the litigation."  *Lujan v. Defenders of*

7    *Wildlife*, 504 U.S. 555, 561 (1992).  This means Plaintiff must show standing "through

8    evidentiary proof" at the class certification stage.  *Comcast*, 133 S. Ct. at 1432; *see also Evans v.*

9    *Linden Research, Inc.*, No. C 11-1078 DMR, 2012 WL 5877579, at *6 (N.D. Cal. Nov. 20, 2012)

10   (On a motion for class certification, "Plaintiffs must demonstrate, not merely allege, that they

11   have suffered an injury-in-fact to establish Article III standing to bring the claims asserted on

12   behalf of the [class].").  Plaintiff cannot meet her burden.

13           ***First***, Plaintiff offers no evidentiary proof of a concrete and particularized injury-in-fact

14   that is fairly traceable to Apple.  Plaintiff must demonstrate that her injury is "fairly . . .

15   trace[able] to the challenged action of the defendant, and not . . . th[e] result [of] the independent

16   action of some third party not before the court."  *Native Village of Kivalina v. ExxonMobil Corp.*,

17   696 F.3d 849, 867 (9th Cir. 2012), quoting *Pritikin v. Dep't of Energy*, 254 F.3d 791, 797 (9th

18   Cir. 2001).   The causal chain between Plaintiff's (alleged) injury and Apple's (alleged) conduct

19   must be more than "attenuated" — "where the causal chain 'involves numerous third parties

20   whose independent decisions collectively have a significant effect on plaintiffs' injuries, . . . the

21   causal chain [is] too weak to support standing at the pleading stage.'"  *Id.* (citations omitted).

22

23

24

25

26

27

28

1

2

3

4

5

6

7

8             **B.**      **The Proposed Class Includes Members Who Lack Standing**

9        Even if Plaintiff could demonstrate her own standing, scores of the proposed class

10 members necessarily lack standing. "[N]o class may be certified that contains members lacking

11 Article III standing." *Mazza v. Am. Honda Motor. Co.*, 666 F.3d 581, 594 (9th Cir. 2012)

12 (internal quotation marks omitted).[2] "The class must . . . be defined in such a way that anyone

13 within it would have standing." *Sanders v. Apple Inc.*, 672 F. Supp. 2d 978, 991 (N.D. Cal. 2009)

14 (internal quotation marks omitted). Broad classes whose definitions include people who

15 purchased a certain product or who participated in some commercial transaction are routinely

16 denied class certification where the class necessarily sweeps in people who suffered no injury as a

17 result. *See, e.g., Mazur v. eBay*, 257 F.R.D. 563, 567 (N.D. Cal. 2009) (denying certification in a

18 consumer fraud class action where the proposed class of "all persons in the United States who

19 won auctions managed by Seller Defendants and operated by eBay" was overbroad because it

20 included many persons who were not harmed by the alleged fake bidding); *O'Shea v. Epson Am.,*

21         [2] The cases Plaintiff cites on this point are inapposite. First, *Kohen v. Pac. Inv. Mgmt. Co.*

22 *LLC*, 571 F.3d 672 (7th Cir. 2009), is a Seventh Circuit case, which courts have stated "seems to be at odds" with the Ninth Circuit's rule in *Mazza*. *Fox v. Riverview Realty Partners*, No. 12 C

23 9350, 2014 WL 1613022, at *3 (N.D. Ill. Apr. 22, 2014); *compare with Tietsworth v. Sears, Roebuck & Co.*, No. 5:09-cv-00288-JF (HRL), 2012 WL 1595112, at *14 (N.D. Cal. May 4,

24 2012) (citing *Mazza* and denying class certification in part due to lack of standing, noting "it is unclear how an individual who purchased a Machine within the class period but then returned,

25 sold, or otherwise disposed of the Machine without experiencing any error codes could be deemed to have suffered a compensable injury.") Second, in *In re Cathode Ray Tube (CRT)*

26 *Antitrust Litig.*, No. C-07-5944-SC, 2013 WL 5391159, at *1 (N.D. Cal. Sept. 24, 2013), a class of indirect purchases sought class certification based on an allegation of price-fixing across the

27 market. For the purposes of the antitrust claims in that case, the Court was satisfied that plaintiffs had established a "common method for proving that each class member was injured." *Id.* at *6.

28 Plaintiff here has failed to meet that burden.

1 | *Inc.*, No. CV 09-8063 PSG (CWx), 2011 WL 4352458, at *11 (C.D. Cal. Sept. 19, 2011) (class of

2 | all persons who purchased a certain inkjet printer in the class period denied certification for lack

3 | of standing because plaintiff failed to "show that all persons in the United States who purchased

4 | an Epson NX series printer during the class period suffered an injury which was caused by

5 | Epson's alleged misrepresentation").

6 |       Plaintiff's putative class seeks redress for tortious interference with contract.  To prove

7 | their claims, class members must show ***injury*** that was caused by the alleged interference with a

8 | contract.  *Piping Rock Partners, Inc. v. David Lerner Assocs., Inc.*, 946 F. Supp. 2d 957, 979

9 | (N.D. Cal. 2013).   Here, the alleged injury is that Apple "prevent[s] certain text messages sent to

10 | Plaintiff and the class members from being delivered to Plaintiff and the class members on their

11 | non-Apple devices."  (Compl. at ¶ 37.)  Plaintiff's class, however, includes ***anyone*** who switched

12 | from an iPhone to a non-Apple phone within the class period.  Plaintiff's class thus improperly

13 | sweeps in those who switched mobile devices but ***who suffered no injury***, including:

14 |       •   ***Persons Who Received All Texts Sent from Users of Apple Devices.***  Plaintiff's

15 | proposed class fails to exclude those iPhone users who switched to a non-Apple device, but

16 | continued to receive text messages without interruption.

17 | 

18 | 

19 | 

20 | 

21 | 

22 | 

23 | 

24 | 

25 |       In addition, some putative class members switched devices and experienced

26 | no issues because they never used iMessage on their Apple devices.  (*Id.* ¶16, Ex. 14, 156:8-

27 | 157:5.)  These class members suffered no injury and lack standing.  *See Hovsepian v. Apple, Inc.*,

28 | No. 08-5788 JF (PVT), 2009 WL 5069144, at *6 (N.D. Cal. Dec. 17, 2009) ("[T]he class is not

1  ascertainable because it includes members who have not experienced any problems with their

2  iMac display screens.  Such members have no injury and no standing to sue.").

3  •   ***Persons Who Failed To Receive a Text Because of Technical Issues Unrelated***

4  ***to Apple's iMessage System.***  For those class members who failed to receive text messages after

5  switching to a non-Apple phone, Plaintiff's class improperly includes people who failed to

6  receive a text due to some cause unrelated to Apple.  Plaintiff improperly **assumes** that every text

7  message sent to members of the putative class was sent as an iMessage, rather than as an SMS or

8  MMS.  This is an erroneous and unsupported assumption.  iPhones can send text messages as

9  iMessages or as SMS, and each user may elect to send an individual message as an iMessage or

10  SMS.  (Cheung Decl. ¶6, Ex. 4, 97:10-20.)  As explained by Apple's expert, Dr. John Kelly, text

11  messages — whether sent as SMS or an iMessage — may not be delivered due to a myriad of

12  reasons entirely unrelated to Apple.  For example, messages may not be received because of user

13  error, device malfunction, or wireless providers' network failures.  (*Id*. ¶3, Ex. 1 ¶ 9.)  For these

14  putative class members, any failed text messages were **not** caused by Apple.  There is therefore

15  an "absence of class-wide proof of a 'causal connection between the injury and the conduct

16  complained of, such that the injury is fairly traceable to the action challenged.'"  *O'Shea*, 2011

17  WL 4352458, at * 11 (*quoting Renee v. Duncan*, 623 F.3d 787, 796–98 (9th Cir. 2010)).

18  •   ***Persons Who Failed To Receive a Text Due to Restrictions in Their Wireless***

19  ***Contracts.***  In addition to the numerous technical reasons why a text may not be delivered, text

20  messages may not be delivered due to restrictions in carriers' contracts.  For example, cellular

21  carriers and Android phones offer text blocking as an option for those who do not want to receive

22  any text messages.  ( Cheung Decl. ¶3, Ex. 1 ¶ 15.)  Additionally, providers may suspend texting

23  services for class members who failed to pay their wireless bills.

24  Because Plaintiff's class is overbroad and includes individuals who lack standing, class

25  certification must be denied.  *Tietsworth*, 2012 WL 1595112, at *14.

26  **C.   Plaintiff's Class is Not Ascertainable**

27  Plaintiff cannot amend her class definition to exclude those without standing because the

28  resulting class would not be ascertainable.  As discussed below, any attempt to narrow the class

1   definition to only those who have standing will require many individualized inquiries.  "[T]he

2   party seeking certification must demonstrate that an identifiable and ascertainable class exists."

3   *Xavier v. Philip Morris USA Inc.*, 787 F. Supp. 2d 1075, 1089 (N.D. Cal. 2011).  "Where

4   information necessary to ascertain the class is not readily available, class certification is

5   inappropriate."  *In re Flash Memory Antitrust Litig.*, No. C 07-0086 SBA, 2010 WL 2332081, at

6   *14 (N.D. Cal. June 9, 2010) (denying class certification in part for lack of ascertainability).

7        Plaintiff has not even established that her proposed overbroad class is ascertainable.

8   Plaintiff asserts that her proposed class "can be verified by carriers' records" (Mot. at 25.), but

9   she provides no support for this statement.  It is not enough for a plaintiff to say she can identify

10  the class members; the plaintiff's burden is to show that it can be done.  *See, e.g.*, *Deitz v.

11  Comcast Corp.*, No. C 06-06352 WHA, 2007 WL 2015440, at *8 (N.D. Cal. July 11, 2007)

12  ("Plaintiff nowhere cites, nor has the Court found in the voluminous record, any Comcast records

13  that contain information on the types of devices owned by its subscribers. It would be impossible

14  to determine without significant inquiry which subscribers owned such devices."); *Dioquino v.

15  Sempris, LLC*, No. CV 11-05556 SJO (MRWx), 2012 WL 6742528, at *6 (C.D. Cal. Apr. 9,

16  2012) (denying certification where the Plaintiff failed to produce an "adequate evidentiary

17  source" from which to determine "with particularity" the members of the class).  Plaintiff has the

18  "initial burden to demonstrate the existence of an ascertainable class," and such "evidence should

19  have been proffered with Plaintiffs' moving papers in order to afford Defendants a full and fair

20  opportunity to respond."  *Flash Memory*, 2010 WL 2332081, at *15.  Plaintiff has failed to meet

21  her burden of showing that wireless carriers' records can identify all users of devices running on

22  iOS5 or later who then switched to a non-Apple device.

23  **D.      Class Certification Should Be Denied Because Plaintiff Has Not
          Demonstrated The Existence or Predominance of Common Issues
24        Required Under Subsection (b)(3)**

25        To meet Rule 23(a)'s commonality requirement, Plaintiff must demonstrate that questions

26  of law or fact common to the class will generate common ***answers***.  *Wal-Mart*, 131 S. Ct. at

27  2550-51.  Where, as here, Plaintiff alleges a class under Rule 23(b)(3), she must go a step further

28  — she must show that "questions of law or fact common to class members ***predominate*** over any

1  questions affecting only individual members, and that a class action is ***superior*** to other available

2  methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3)

3  (emphasis added).  The rule ensures that a proposed class's claims will be susceptible to common

4  proof and "ultimately prevents the class from degenerating into a series of individual trials."

5  *Herskowitz v. Apple, Inc.*, 301 F.R.D. 460, 469 (N.D. Cal. 2014) (citation omitted).  Where the

6  resolution of a case "require[s] the separate adjudication of each class member's individual claim

7  or defense," class treatment is inappropriate.  *Zinser v. Accufix Research Inst., Inc.*, 253 F.3d

8  1180, 1189 (9th Cir. 2001) (quotations and citation omitted).  That is the case here.

9                    **1.**       **Courts Routinely Deny Certification of Intentional Interference**

                         **Claims Due to the Predominance of Individualized Issues.**

10

11        As a preliminary matter, Plaintiff suggests that certification of claims for tortious

12  interference is routine.  (Mot. at 2:2-16.)  Not so.  Multiple courts across the country have

13  declined to certify tortious interference claims for class treatment because individualized issues of

14  causation and injury predominated over any issues common to the proposed class.  *See, e.g.*,

15  *Gibson v. Credit Suisse AG*, No. CV 10-1-EJL-REB, 2013 WL 5375648, at *13 (D. Idaho Aug.

16  16, 2013) *report and recommendation adopted*, No. 1:10 CV 001-EJL-REB, 2013 WL 5375597

17  (D. Idaho Sept. 24, 2013); *Conn. Cooling Total Air, Inc. v. Conn. Natural Gas Corp.*, 738 A.2d

18  1167, 1171 (Conn. Super. Ct. 1999); *Christiana Mortg. Corp. v. Del. Mortg. Bankers Ass'n*, 136

19  F.R.D. 372, 383-84 (D. Del. 1991); *Arango v. Work & Well, Inc.*, No. 11 C 1525, 2012 WL

20  3023338 (N.D. Ill. July 24, 2012); *Peltier Enterprises, Inc. v. Hilton*, 51 S.W.3d 616 (Tex. App.

21  2000).  As detailed below, the same issues pervade here.

22                    **2.**       **Differences in Individual Carrier Contracts Defeat**

                         **Commonality and Predominance.**

23

24        In California, a claim for tortious interference with contract requires the plaintiff to show:

25  (1) a valid contract between plaintiff and a third party; (2) defendant's knowledge of this contract;

26  (3) defendant's intentional acts designed to induce breach or disruption of the contractual

27  relationship; (4) actual breach or disruption of the contractual relationship; and (5) resulting

28  damage.  *Piping Rock Partners*, 946 F. Supp. 2d at 979.  Plaintiff's proposed class definition

1    makes no attempt to account for the wide assortment of wireless agreements made available to the

2    public by the many different wireless carriers.  Critically, ***Plaintiff's proposed class would even***

3    ***include customers whose wireless plan did not include text messaging***.[3]  But any putative class

4    members whose contracts did not provide for text messaging in the first place cannot have been

5    harmed by Apple's alleged interception of messages.  Apple cannot interfere with contractual

6    rights these putative class members never had.

7          Because liability in this case hinges on the terms of each and every putative class

8    member's wireless contract, and because Plaintiff has offered no method for determining exactly

9    which contracts actually provide for text messaging, individual issues predominate and preclude

10   class certification.  *See Gibson*, 2013 WL 5375648, at *13 ("Because an examination of the

11   named Plaintiffs' contracts making up their tortious interference with contract claim does not

12   adequately paint a consistent picture of the other property purchasers' contractual

13   relationships…the legal and factual questions common to the Class, significant as they may

14   be…do not predominate over questions affecting only individual Class members' contract-based

15   claims."); *see also Martinez v. Welk Group, Inc.,* No. 09cv2883 AJB, 2012 WL 2888536, at *4

16   (S.D. Cal. July 13, 2012) (finding no predominance in part because "[s]ome...owners have no

17   contract" and "[t]hose who do have contracts...do not all have the same contract"); *CLN Props.,*

18   *Inc. v. Republic Servs., Inc.,* No. CV-09-1428-PHX-DGC, 2010 WL 5146734, *3 (D. Ariz. Dec.

19   13, 2010) (predominance not met when "the facts presented by the parties make clear that

20   members of the class held a wide variety of contracts with Defendant, and some had no written

21   contracts at all."); *Church v. Consol. Freightways, Inc.*, No. C-90-2290 DLJ, 1991 WL 284083, at

22          [3] Plaintiff concedes that such wireless contracts exist.  (Mot. 18 ("[*V*]*irtually* all plans
     today and all smartphones permit text messaging.") (emphasis added).)  Even if Plaintiff had
23   asserted that all wireless contracts allow for text messaging and are identical in all other material
     respects, that would not be enough to allow certification.  Actual evidence is required.
24   *Campusano v. BAC Home Loans Servicing LP*, No. CV 11-4609 PSG (JCx), 2013 WL 2302676,
     at *5 (C.D. Cal. Apr. 29, 2013) ("Although Plaintiffs *assert* that all of the loan modification
25   agreements signed by putative class members contain identical provisions pertaining to effective
     dates, they have fallen far short of their burden of demonstrating this is 'in fact' the case.")
26   (emphasis in original); *Parker v. Bank of Am., N.A.*, ---F.Supp. 3d---, No. 11-CV-0520 (KBJ),
     2015 WL 1737278, at *10 (D.D.C. Apr. 16, 2015) ("the plaintiff who seeks class action
27   certification of a breach of contract claim bears the burden of establishing that there are no
     material variations in the class members' agreements.").
28

1   *13 (N.D. Cal. June 14, 1991) (predominance not met where "[t]he record establishes that there

2   were at least ten different variations of contract used [and the] circumstances surrounding the

3   creation and termination of each of these contracts, or whether there were any modifications to

4   such contracts (or whether such modifications were enforceable), would undeniably vary.").

5          **3.      Individualized Inquiries Regarding Whether Each Class
                      Member Failed to Receive a Text Message Defeat Commonality

6                     and Predominance.**

7          Plaintiff's proposed class includes people who received all of their expected text

8   messages, and therefore have no claim.  Plaintiff concedes that Apple does not prevent delivery of

9   *all* messages sent from iPhone users to individuals that switched to non-Apple devices (to the

10  extent Apple prevents delivery at all).  (Compl. ¶ 19) ("she now receives text messages sent from

11  some iPhones").[4]

12

13

14

15

16

17

18          **a.      The Court Must Evaluate Each Class Member's Efforts
                       to Deregister.**

19

20          Apple provided a number of simple solutions for iPhone users to deregister themselves

21  from iMessage when they no longer wished to use the iMessage service, such as:

22  •   Toggling off iMessage on an iPhone.

23

24

25

26

27

28

1    - Using Apple's online deregistration tool.

2    - Contacting AppleCare to request deregistration.

3    - Erasing all contents and settings on iPhone.

4    Many iPhone users knew about one or more of these options and successfully deregistered.[5]

5

6

7                              b.    **The Court Must Evaluate the Impact of Back-End**
                                     **Deregistration Processes on Each Class Member.**
8

9          In addition to these user-facing options, Apple also developed back-end processes to

10   deregister former iPhone users' devices from iMessage without any involvement by users.

11

12

13

14

15

16

17

18

19

20

21

22

23   _____

24          [5] One customer in response to the Apple Support Community thread "How to remove my
     phone number from iMessage?" wrote, "this is a really easy problem to fix, all you need to do is
25   log out of imessage on the phone then loge [sic] back in with the new sim and it will change the
     number or do it without the sim" (Cheung Decl. ¶12, Ex. 10, at 6). In response to a thread on the
26   Apple Support Communities page, one user posted, "With certain services such as iMessage . . .
     you link the device with the service . . . Users have to and are expected to based on when they
27   sign up for these services to manage the access . . . iMessage service has to be managed and if
     you change devices you need to act accordingly" (*Id.* at 4).

28

[BLACK REDACTION]

### c. The Court Must Evaluate the Settings on Each Sender's Device.

Each sender's device must be examined to determine whether a text failed.  Even if a sender sent a message to a non-Apple device initially as an iMessage, if the sender had the "Send as SMS" function toggled on, that message would automatically resend as an SMS if the iMessage failed to be delivered.  Under these circumstances, the putative class member would successfully receive that SMS text message.  Throughout the class period, any individual sender could toggle "Send as SMS" on or off at any time.  There is no feasible way to determine whether an individual sender had "Send as SMS" turned on such that a failed iMessage would be automatically resent as an SMS.

The cumulative effect of these various tools and automatic protocols means that numerous factors must be evaluated to determine if particular putative class members actually experienced the alleged harm.  But Plaintiff's class definition does not account for this, and instead sweeps in people who received all of their expected text messages and suffered no injury whatsoever.

### d. Plaintiff Proposes No Common Method for Identifying Individuals Impacted by the Alleged Interference.

Plaintiff offers no classwide method for sorting out those who missed texts from those with no claim.  Plaintiff has identified no records of messages that were (i) sent and (ii) not delivered to the intended recipient.[6]  Faced with the absence of any such records, Plaintiff may

[BLACK REDACTION]

1   propose that class membership can be established through: (1) a declaration from a third party
2   that she sent a class member a text message after the class member switched from an Apple
3   device running iOS 5 or later to a non-Apple device; and (2) a declaration from the class member
4   that she did not receive that text message.

5       Any statements from third parties offered to show that messages were sent would be
6   inadmissible hearsay. Apple is not required to accept these statements as true without the benefit
7   of cross-examination. "Such a procedure would not be proper or just." *Xavier*, 787 F. Supp. 2d
8   at 1090(denying class certification and rejecting plaintiff's proposal to have potential class
9   members submit affidavits regarding their smoking when it had no records of who purchased its
10  product). "While courts in this district have previously found proposed classes ascertainable even
11  when the only way to determine class membership is with self-identification through affidavits . .
12  . courts in this district have also declined to certify classes when self-identification would be
13  unreliable or administratively infeasible." *Bruton v. Gerber Prods. Co.*, No. 12-CV-02412-LHK,
14  2014 WL 2860995, at *9 (N.D. Cal. June 23, 2014) (denying class certification and rejecting the
15  proposal of self-identification where the number of different products and changes in labeling
16  "make Plaintiff's proposed class identification method administratively unfeasible.").

17      Self-identification will be unreliable and infeasible in this case. The sender's affidavit
18  would be unreliable because the sender would need to identify a specific time and date that a
19  message was sent as an iMessage. Given the inherently ephemeral nature of texting, memories
20  that a specific text was sent on a specific date and time are highly unreliable. Likewise, the
21  recipient may have been mistaken about an unreceived message when she actually received the
22  message. She may have overlooked it or accidentally deleted it.

25                                                                      *See Jones v. ConAgra*

                                                                 (Footnote continues on next page.)

1  *Foods, Inc.*, No. C 12-01633 CRB, 2014 WL 2702726, at *10 (N.D. Cal. June 13, 2014) ("Even

2  assuming that all proposed class members would be honest, it is hard to imagine that they would

3  be able to remember which particular Hunt's products they purchased from 2008 to the present,

4  and whether those products bore the challenged label statements."); *Hayes v. Wal-Mart Stores,*

5  *Inc.*, 725 F.3d 349, 356 (3d Cir. 2013) ("This petition for class certification will founder if the

6  only proof of class membership is the say-so of putative class members.").

7

8

9

10

11

12  ████████████████████████████████████  Contrary to Dr. Green's assumptions, his

13  proposed theory does not enable Plaintiff to prove through common evidence that the class

14  members failed to receive a text message. (*Id.* ¶3, Ex. 1 ¶ 20.)

15      This case would necessarily devolve into an endless series of mini-trials on this issue

16  alone. To avoid just that type of scenario, courts routinely deny class certification in analogous

17  situations where the very fact of damages would require individualized proof. *Gonzalez v.*

18  *Comcast Corp.,* No. 10-cv-01010-LJO-BAM, 2012 WL 10621, at *18 (E.D. Cal. Jan. 3, 2012)

19  (denying certification because "a proposed class action requiring the court to determine

20  individualized *fact* of damages does not meet the predominance standards of Rule 23(b)(3).… it is

21  generally accepted that classes should not be certified where not every member of the proposed

22  classes can prove with common evidence that they suffered impact") (internal citations and

23  _____

    (Footnote continued from previous page.)

24

25

26

27

28

1   quotations omitted); *Gibson*, 2013 WL 5375648, at *15 (predominance not met where

2   individualized proof necessary to establish very *fact* of damages for plaintiffs' tortious

3   interference with contract claim).  The same is true here.

4           **4.      Individualized Inquiries Regarding The Cause of Any Failed**
            **Messages Defeat Commonality and Predominance.**
5

6           Causation is an integral element of any claim for tortious interference with contract.

7   *Franklin v. Dynamic Details, Inc.*, 116 Cal. App. 4th 375, 391 (2004).  Where common issues do

8   not predominate over individual issues of causation, class certification is inappropriate.  *See*

9   *Poulos v. Caesars World, Inc.*, 379 F.3d 654 (9th Cir. 2004) (affirming denial of class

10  certification where common issues would not predominate over individualized issues of

11  causation).  Plaintiff attempts to sidestep the causation issue entirely by arguing that *the only*

12  reason putative class members failed to receive text messages is because of Apple's alleged

13  interference through the design of its iMessage system.  But the fact is that there are numerous

14  reasons why someone may not receive a given text message.  For instance, the following factors

15  could all cause a text message to go un-received:

16  • **Phone Settings**.  The sender or recipient may purposefully or inadvertently turn off the

17         text message function on their phone, or otherwise change a setting that is critical to

18         texting.  ( Cheung Decl. ¶3, Ex. 1 ¶ 9.)  The party's phone may also be improperly

19         configured by their wireless carrier so as to prevent texting.  (*Id*. ¶6, Ex. 4, 196:12-23.)

20  • **Service Issues**.  A text may not be delivered if either party has poor cell service.  ( *Id*. ¶3,

21         Ex. 1 ¶ 9.)  International travel can also effect text message transmission for a variety of

22         reasons, including when either party has a wireless plan that doesn't cover texting abroad.

23         (Cheung Decl. ¶6, Ex. 4, 196:12-197:7, 198:2-14.)  Or one of the parties may not have

24         paid their cell phone bill and had their text message service turned off or suspended.

25  • **Contract Issues**.  A class member may not have received a text message if either party

26         subscribed to a wireless plan that did not allow texting or that blocked text messages.  (*Id*.

27         ¶3, Ex. 1 ¶ 15.)

28

1   • **Device Issues.**  Defects or malfunctions related to the sender's device or the recipient's

2       device may prevent text messages from being delivered.  (*Id.* ¶3, Ex. 1 ¶¶ 9, 16.)

3   • **Conduct of Putative Class Member.**  Each class member's own choices impact whether

4       they suffered any injury.  As Plaintiff admits, numerous public articles and postings

5       advised class members to deregister from the iMessage service.  (Compl. ¶ 27; Mot. 7.)

6       To the extent a putative class member saw those instructions or knew that she must

7       deregister herself from the system to avoid disruption, her own failure to act caused any

8       failed text messages.

9   The communications received by Apple from customers also illustrate just some of the different

10  causes of apparently failed text messages.  (*See* Kohlman Decl. ¶ 5, Exs. 1-5.)

11      As this non-exhaustive list makes clear, there are a wide variety of reasons that one may

12  not receive a text message as expected.  So even if a putative class member could produce

13  evidence of a missed text message, Apple would still be entitled to examine each instance of a

14  missing text to determine whether the iMessage system actually caused any such issue, or

15  whether one of the myriad of other potential causes was ultimately to blame.

16      These individualized issues for each prospective class member would overwhelm any

17  common issues, and render the case entirely unmanageable.  Individual issues relating to

18  causation therefore predominate and defeat commonality.  *In re Paxil Litig.*, 212 F.R.D. 539, 551

19  (C.D. Cal. 2003) (denying certification where "individual questions of fact regarding causation

20  nevertheless subvert any benefits to be gained through a class action proceeding.").

21      Moreover, issues of intent and causation will vary depending on whether a class member's

22  (alleged) non-receipt of a text message was due to a known and intended design feature of

23  iMessage.  *See Moore v. Apple Inc*., No. 14–CV–02269–LHK, 2014 WL 5830374, at *8 (N.D.

24  Cal. Nov. 10, 2014) (noting that intent requires knowledge that interference is certain or

25  substantially certain to result from the defendant's action).  Although Plaintiff suggests that all

26  undelivered text messages destined for former Apple users were due to Apple's chosen design for

27  the system, the evidence shows that unexpected issues periodically arose with the complex, novel

28  technology at the core of iMessage.  (Cheung Decl. ¶7, Ex. 5, 36:15-37:7, 111:4-13 (noting that

1    that since the second half of 2014, the current trend of calls regarding deregistration is

2    "downward").)   If Apple received consistent reports from users about an iMessage registration

3    issue, Apple promptly investigated and remedied significant, known issues immediately.  Given

4    any deregistration issues faced by former iPhone users could adversely impact the ability of

5    *current iPhone users* to successfully send SMS messages, Apple was motivated to address the

6    sporadic issues as soon as they arose.  To the extent any class member failed to receive a text

7    message because of any unexpected technical issue, he or she cannot establish the requisite intent

8    for a claim for tortious interference.  *See, e.g., Family Home & Fin. Ctr., Inc. v. Fed. Home Loan*

9    *Mortg. Corp.*, 525 F.3d 822, 825-26 (9th Cir. 2008) (noting that even "evidence of negligence is

10   not proof of intentional interference by [defendant] with [plaintiff's] contract").

11            **5.        Plaintiff's Damages Theory Is Inappropriate for a Tortious**
                          **Interference Claim and Cannot Apply to the Class**
12

13           Two principles arose from the Supreme Court's recent decision in *Comcast*.  First, before

14   a court may certify a Rule 23(b)(3) damages class, "the plaintiffs must be able to show that their

15   damages stemmed from the defendant's actions that created the legal liability"; in other words,

16   "'a model purporting to serve as evidence of damages in [a] class action must measure only those

17   damages attributable to that theory.'" *Levya v. Medline Indus. Inc.*, 716 F.3d 510, 514 (9th Cir.

18   2013) (quoting *Comcast*, 133 S. Ct. at 1433, 1435). Second, "a methodology for calculation of

19   damages that could not produce a class-wide result [i]s not sufficient to support certification."

20   *Jimenez v. Allstate Ins. Co.*, No. 12-56112, 2014 WL 4338841, at *4 (9th Cir. Sept. 3, 2014).

21   Plaintiff's proposed damages model fails under both of these standards.

22           First, the damages Plaintiff seeks do not stem from her own theory of liability.  Plaintiff

23   bases this case on Apple's alleged interference with her contractual rights under her wireless

24   agreement.  (Mot. 1.)  The only available damages under this theory are:

25                      (a)   the **pecuniary loss** of the benefits of the contract or the
                              prospective relation;
26

27                      (b)   **consequential losses** for which the interference is a legal
                              cause; and
28

(c) emotional distress or actual harm to reputation, if they are reasonably to be expected to result from the interference.

Restatement (Second) of Torts § 774A (1979). At best, Plaintiff may be entitled to the monetary value of the texts she allegedly missed, or any consequential damages caused by the interference. But Plaintiff never claims that the texts she allegedly missed have any value, either intrinsically or because of their unique content. ▮▮▮▮▮▮▮▮▮▮

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ In any case, such a claim would not be feasible on a classwide basis, since it would require individualized inquiries into the *number* of missed text messages that each putative class member should have received, or into the *content* of each particular text message. Nor does Plaintiff ever allege any kind of consequential damages, which would prove even more unmanageable on a classwide basis.

Instead of pursuing the damages actually available for a tortious interference claim, Plaintiff creates an entirely novel damages theory proffered by Dr. Dwyer. Specifically, Plaintiff claims that each member of the putative class essentially overpaid for their text messaging plan because "there was a real likelihood that text messages sent to them would not be delivered due to Apple's conduct." (Mot. 23.) *But these types of 'overpayment' damages do not stem from the alleged tortious interference claim.* Certification should be denied on this basis alone. *Werdebaugh v. Blue Diamond Growers*, No. 12-CV-02724-LHK, 2014 WL 7148923, at *14 (N.D. Cal. Dec. 15, 2014) ("the Court concludes that Plaintiff has failed to show that his proposed damages stemmed from the defendant's actions that created the legal liability. This failure defeats the certification of a damages class under Rule 23(b)(3).") (internal citations and quotations omitted); *Brazil v. Dole Packaged Foods, LLC*, No. 12-CV-01831-LHK, 2014 WL 2466559, at *14-15 (N.D. Cal. May 30, 2014) ("Plaintiff's damages model purporting to serve as evidence of damages in this class action must measure only those damages attributable to [the defendant's conduct]. If the model does not even attempt to do that, it cannot possibly establish that damages are susceptible of measurement across the entire class for purposes of Rule 23(b)(3).") (internal citations and quotations omitted).

1    Plaintiff's damages model also fails under the second *Comcast* principle because it cannot

2   produce a classwide result. Plaintiff claims that *all* putative class members paid more for their

3   wireless plans than they would have had they known that they might not receive all of their

4   expected text messages. (Mot. 23.) This theory is fundamentally flawed on a number of levels.

5    First, as discussed in detail above, some putative class members received all the text

6   messages that they expected to receive, and others had wireless contracts that did not provide for

7   texting to begin with. (Cheung Decl. ¶15, Ex. 13, 132:5-133:8, 134:7-135:3; ¶6, Ex. 4. ¶ 15.)

8   These class members did not overpay for anything; they got exactly what they bargained for.

9   Class members who themselves suffered no injury cannot claim injury because *someone else* may

10   not have received the full expected benefit from their wireless contract.

11    Second, Plaintiff implies that every putative class member overpaid for their wireless

12   contract *to the exact same degree*. This is patently false.

13

14

15

16

17

18    In sum, Plaintiffs propose a damages model on behalf of an unknowable group of people,

19   who suffered an unknowable amount of harm, based on an overpayment that their liability theory

20   does not support. This type of blind guesswork defeats predominance and precludes certification.

21   *See Wal-Mart*, 131 S. Ct. at 2550 (disapproving the "novel project" of averaging damages to class

22   members based on survey responses from a subset of the class); *Jimenez*, 2014 WL 4338841, at

23   *4 ("[C]ircuit courts including [the Ninth] have consistently held that statistical sampling and

24   representative testimony are acceptable ways to determine liability *so long as the use of these*

25   *techniques is not expanded into the realm of damages*.").[8]

26

27    [8] *Accord Davis v. Cintas Corp.*, 717 F.3d 476, 490-91 (6th Cir. 2013) (relying on *Wal-Mart* to reject a "trial by formula" approach of determining class members' damages);

28                                                                  (Footnote continues on next page.)

1

2

### 6.   Plaintiff Does Not Explain Why California Tort Law Should Apply to the Claims of a Nationwide Class

3       Problems of predominance are particularly acute when, as here, a named plaintiff seeks to

4   certify state law claims on behalf of a putative nationwide class.  Courts are not permitted to

5   "simply apply the law of the forum state" by default.  *In re Sch. Asbestos Litig.*, 977 F.2d 764,

6   797 (3d Cir. 1992) (citing *Phillips Petroleum Co. v. Shutts*, 472 U.S. 797, 814-23, 105 S. Ct.

7   2965, 86 L. Ed. 2d 628 (1985)).  Rather, the Court is obligated to ensure that "certification of a

8   nationwide class under the laws of a single state comports with due process."  *In re Yahoo Mail*

9   *Litig.*, ---F. Supp. 3d ---, No. 13-CV-04980-LHK, 2015 WL 3523908, at *20 (N.D. Cal. May 26,

10  2015).  Under California's choice of law rules,[9] Plaintiff "bears the initial burden to show that

11  California has significant contact or significant aggregation of contacts to the claims of each class

12  member." *Id.* (quoting *Mazza*, 666 F.3d at 589; internal quotation marks omitted).  Only after

13  Plaintiff makes this initial showing does the burden shift to Apple to demonstrate why the laws of

14  other jurisdictions should apply.  *Id*.

15      Plaintiff has not even attempted to satisfy her initial burden.  She does not explain why

16  California law should apply to the claims of every putative class member, regardless of that

17  putative class member's state of residence.  Nor does she so much as mention choice of law

18  principles in her motion.  Instead, Plaintiff assumes — without discussion — that California law

19  governs the tortious interference claim of all putative class members across the country.  Her

20  burden requires more than assumptions.  *See Sch. Asbestos*, 977 F.2d at 797.

21          ### E.   Plaintiff's Claims Are Not Typical of the Class

22      Plaintiffs' claims, and Apple's defenses to the claims, must be "typical of the claims or

23

24  (Footnote continued from previous page.)

25  *Espenscheid v. DirectSat USA, LLC*, 705 F.3d 770, 774 (7th Cir. 2013) (rejecting a class damages formula where use of averages would confer a windfall on some class members and under-compensate others).

26

27  [9] Because jurisdiction here is premised on diversity, California's choice of law rules apply. *See Klaxon Co. v. Stentor Elec. Mfg. Co.*, 313 U.S. 487, 496–97 (1941) (holding that a district court sitting in diversity must apply the choice-of-law rules of the forum state).

28

1  defenses of the class." Fed. R. Civ. P. 23(a)(3). As the Supreme Court noted in *Wal-Mart*,

2
> [T]he commonality and typicality requirements of Rule 23(a) tend to
> merge. Both serve as guideposts for determining whether under the
3
> particular circumstances maintenance of a class action is economical and
> whether the named plaintiff's claim and the class claims are so interrelated
4
> that the interests of the class members will be fairly and adequately
> protected in their absence.
5

6  131 S. Ct. at 2251 n.5 (citation and internal quotation marks omitted). The myriad individualized

7  issues precluding commonality and predominance discussed above also preclude typicality.

8  Plaintiff's lack of admissible evidence regarding missed texts and the very contract that forms the

9  basis of her tortious interference claim means that she will be "subject to unique defenses which

10  threaten to become the focus of the litigation." *Hanon v. Dataproducts Corp.*, 976 F.2d 497, 508

11  (9th Cir. 1992). The "typicality" requirement is not satisfied in such circumstances.[10] *Id.*

12           **F.    Plaintiff's UCL Claim is Derivative of Her Claim for Tortious
                     Interference, and Certification Should be Denied for the Same Reasons**
13

14           Plaintiff's UCL claim is wholly derivative of her tortious interference claim. Where, as

15  here, class certification is inappropriate for Plaintiff's primary/underlying claim, certification is

16  likewise inappropriate for the derivative UCL claim. *See Roth v. CHA Hollywood Med. Ctr.,*

17  *L.P.*, No. 2:12-CV-07559-ODW (SHx), 2013 WL 5775129, at *8 (C.D. Cal. Oct. 25, 2013)

18  (denying certification for UCL claim where it derived entirely from other claims that lacked the

19  requisite commonality for class certification).

20           **V.    CONCLUSION**

21           For the reasons stated herein, Apple respectfully requests that Plaintiff's motion for class

22  certification be denied.

23

24           [10] Further evidence showing that Plaintiff is not a typical class representative may be
25  uncovered after examination of the Apple device Plaintiff had used and the non-Apple device on
    which Plaintiff allegedly failed to receive text messages. Because Plaintiff improperly refused to
    produce her relevant devices, Apple was forced to move to compel their production. On June 9,
26  2015, Magistrate Judge Grewal ordered Plaintiff to produce her devices within 72 hours, so those
    devices were only produced to Apple today. (Dkt. No. 78.) Apple reserves its rights to seek
27  leave to submit further evidence in support of this Opposition based on its analysis of the devices
    that were produced late by Plaintiff.
28

1  Dated: June 12, 2015

DAVID M. WALSH
KAI S. BARTOLOMEO
2                                                TIFFANY CHEUNG
MORRISON & FOERSTER LLP
3

4

By: /s/ David M. Walsh
5                                                    DAVID M. WALSH

6                                                Attorneys for Defendant
APPLE INC.
7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28