1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

United States District Court
Northern District of California

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

ADRIENNE MOORE,

        Plaintiff,

    v.

APPLE INC.,

        Defendant.

Case No. 14-CV-02269-LHK

**ORDER DENYING LEAVE TO FILE MOTION FOR RECONSIDERATION**

Re: Dkt. No. 128, 143

On August 4, 2015, the Court denied Plaintiff Adrienne Moore's motion to certify a class. ECF No. 113.  On August 14, 2015, Plaintiff filed a motion for leave to file a motion for reconsideration of the Court's order denying class certification ("Motion for Leave") pursuant to Civil Local Rule 7-9 and Federal Rule of Civil Procedure 23(c)(1)(C).  ECF No. 128.  Defendant Apple Inc. filed an opposition to the Motion for Leave on September 2, 2015.  ECF No. 131.  A hearing on this motion was held during the Case Management Conference on October 15, 2015. *See* ECF No. 138.  Having considered Plaintiff's motion, the relevant law, the parties' oral arguments, and the record in this case, the Court hereby DENIES Plaintiff's motion.

**I.      DISCUSSION**

        Federal Rule of Civil Procedure 23(c)(1)(C) provides that "[a]n order that grants or denies

1

class certification may be altered or amended before final judgment."  Pursuant to Civil Local

Rule 7-9(a), "[b]efore the entry of a judgment adjudicating all of the claims and the rights and

liabilities of all the parties in a case, any party may make a motion before a Judge requesting that

the Judge grant the party leave to file a motion for reconsideration of any interlocutory order. . . .

No party may notice a motion for reconsideration without first obtaining leave of Court to file the

motion."  Civil Local Rule 7-9(b) provides three grounds for reconsideration of an interlocutory

order:

> (1) That at the time of the motion for leave, a material difference in fact or law
> exists from that which was presented to the Court before entry of the interlocutory
> order for which reconsideration is sought.  The party also must show that in the
> exercise of reasonable diligence the party applying for reconsideration did not
> know such fact or law at the time of the interlocutory order; or
>
> (2) The emergence of new material facts or a change of law occurring after the time
> of such order; or
>
> (3) A manifest failure by the Court to consider material facts or dispositive legal
> arguments which were presented to the Court before such interlocutory order.

Rule 7-9(c) further requires that "[n]o motion for leave to file a motion for reconsideration

may repeat any oral or written argument made by the applying party in support of or in opposition

to the interlocutory order which the party now seeks to have reconsidered."

Plaintiff's motion for class certification sought to certify the following class:

> All persons within the United States who, during the time period
> October 12, 2011 to the present, switched their wireless telephone
> account by porting their cellular telephone number from an Apple
> iPhone device that was operated by iOS version 5 or later to a non-
> Apple cellular telephone.

ECF No. 57.  The Court hereafter refers to this as the "original class."  The Court denied

certification of the original class on August 4, 2015.  ECF No. 113.

Plaintiff contends that reconsideration is warranted under Rule 7-9(b)(3) for failure by the

Court to consider dispositive legal arguments.  In the Motion for Leave, Plaintiff argues that this

Court erred for two reasons.  First, Plaintiff asserts that the Court should have certified a narrower

class instead of denying the class certification motion for overbreadth.  Plaintiff proposes a new

class definition that Plaintiff argues would be certifiable: "a narrower class limited to comprise

Case No. 14-CV-02269-LHK
ORDER DENYING LEAVE TO FILE MOTION FOR RECONSIDERATION

United States District Court
Northern District of California

only those putative members of Moore's initially proposed class who, like Moore herself, were parties to an unlimited text messaging wireless contract at the time of their switch from an iPhone to a non-Apple device," to which the Court hereafter refers as the "proposed narrower class."  ECF No. 128 at 6.  Second, Plaintiff argues that the Court applied the incorrect legal standard for causation for tortious interference with contract claims in California by applying the "but for" causation test instead of the "substantial factor" test described in *Bank of New York v. Fremont General Corp.*, 523 F.3d 902, 909 (9th Cir. 2008).

At the hearing on October 15, Plaintiff modified Plaintiff's argument.  Plaintiff clarified that Plaintiff is not arguing that the Court should have *sua sponte* certified a narrower class. Instead, Plaintiff argues that Plaintiff may argue for certification of a proposed narrower class for the first time on reconsideration, and that the Court on reconsideration should certify Plaintiff's proposed narrower class.  Plaintiff also contends that the Court should apply the *Bank of New York* substantial factor test to evaluate whether the original class and the proposed narrower class are certifiable.  In response to Plaintiff's arguments, the Court begins by addressing Plaintiff's arguments that: (1) the Court should have applied the substantial factor test to evaluate causation, and (2) that the original class is certifiable using the substantial factor test for causation.  The Court then addresses whether Plaintiff's proposed narrower class is certifiable.

### A. Causation for tortious interference with contract

Plaintiff argues that the Court erred by applying the incorrect legal standard for causation for tortious interference with contract in California.

The elements of tortious interference with contractual relations in California are "(1) a valid contract between plaintiff and a third party; (2) defendant's knowledge of this contract; (3) defendant's intentional acts designed to induce a breach or disruption of the contractual relationship; (4) actual breach or disruption of the contractual relationship; and (5) resulting damage."  *See Quelimane Co. v. Stewart Title Guar. Co.*, 19 Cal. 4th 26, 55 (1998), *as modified* (Sept. 23, 1998).

The appropriate test for whether the defendant's intentional acts caused the breach of the

United States District Court
Northern District of California

United States District Court
Northern District of California

contractual relationship was not a vital issue in the class certification motion and order.  Indeed, Plaintiff did not discuss the test for causation at all in her motion for class certification.  ECF No. 57.  Likewise, Apple did not address the appropriate test for causation in its opposition to the motion for class certification.  ECF No. 91.  In Plaintiff's reply to her motion for class certification, Plaintiff argued for the first time that the Court should apply a substantial factor test for causation by citing the following four negligence cases: *In re Neurontin Marketing & Sales Practices Litig.*, 712 F.3d 21, 45 (1st Cir. 2013) (holding that a plaintiff in a negligence action need not offer evidence that "positively excludes every other possible cause of the accident"); *Met. Life Ins. Co. v. Broyer*, 20 F.2d 818, 820 (9th Cir. 1927) (holding that a plaintiff in a negligence action need not "disprove negatively other causes of death" to prove the decedent's death was an accident); *Austin v. Riverside Portland Cement Co.*, 44 Cal. 2d 225, 234 (1955) (discussing the causation standard for negligence torts in California); and *Barclay Kitchen v. Cal. Bank*, 208 Cal. App. 2d 347, 355 (1962) (discussing the causation standard for negligence torts in California). ECF No. 91 at 4.  None of these cases discussed the appropriate test for causation for intentional torts in California.

This Court in its order denying class certification determined in a footnote that the cases relied upon by Plaintiff were inapposite because they addressed the causation standard only for negligence and not for intentional torts.  ECF No. 113 at 22 n.4.  Instead, the Court applied a "but-for" causation test, in accordance with *Beckner v. Sears, Roebuck & Co.*, 4 Cal. App. 3d 504, 507 (1970) ("It is the settled rule in actions for wrongful interference with contract rights that an essential element of the cause of action is that the conduct charged be the procuring cause of the interference and the harm."); *Etolad Music, Inc. v. April Music, Inc.*, 139 Cal. App. 3d 697, 706 (1983) (holding that trial court erred in "instructing the jury that plaintiff had the obligation to prove that defendant was 'a' moving cause" rather than "'the' moving cause" of the tortious interference with contract); *Friwat v. Pack*, No. D046311, 2006 WL 970754, at *3 n.4 (Cal. Ct. App. Apr. 13, 2006) (citing *Beckner* and *Etolad* approvingly).  ECF No. 113 at 22.  All of the California appellate court cases relied upon by this Court applied a "but-for" causation analysis to

4

tortious interference with contract cases.

In the Motion for Leave, Plaintiff argues that the Court improperly applied a "but-for" causation analysis instead of the "substantial factor" causation test.  ECF No. 128 at 8.  Specifically, Plaintiff for the first time in her Motion for Leave cites to the Ninth Circuit's decision in *Bank of New York v. Fremont General Corp.*, 523 F.3d 902, 909 (9th Cir. 2008).  *Bank of New York* held that "California employs the 'substantial factor' test for determining causation in intentional torts cases" and that "the substantial factor test is a broader rule of causality than the 'but for' test."  *Id.*  Plaintiff argues that under *Bank of New York*, this Court ought to have applied the more lenient substantial factor test to assess whether Defendant's alleged conduct was a cause of individual class members' failure to receive text messages.  According to Plaintiff, if this Court had applied the substantial factor test, the Court would have concluded that the original class and the proposed narrower class satisfy the predominance requirement of Rule 23(b)(3).

### 1. The substantial factor test

The Court concedes that it applied the incorrect standard to assess whether Defendant's conduct caused class members' injury.  Under *Bank of New York*, Apple's conduct was a cause of Plaintiff's injury if Apple's conduct was a substantial factor in causing the injury.  523 F.3d at 910; *see also Franklin v. Dynamic Details, Inc.*, 116 Cal. App. 4th 375, 391 (2004) (applying the substantial factor test for causation to a claim for tortious interference with contract).

"The critical question as to causation in intentional torts is whether the actor's conduct is a substantial factor in bringing about the type of harm which he intended from his original act.  No consideration is given to the fact that after the event it appears highly extraordinary that it should have brought about such harm or that the actor's conduct has created a situation harmless unless acted upon by other forces for which the actor is not responsible."  *Bank of N.Y.*, 523 F.3d at 909-10.  California has adopted the definition of "substantial factor" from the Restatement (Second) of Torts.  *See Mitchell v. Gonzales*, 54 Cal. 3d 1041, 1052 (1991) (explaining that the "substantial factor" test was developed by the Restatement (Second) of Torts).  Under the Restatement (Second) of Torts, an actor's conduct "is not a substantial factor in bringing about harm to another

5

1    if the harm would have been sustained" in the absence of the actor's conduct.  Restatement

2    (Second) of Torts § 432(1).  This rule is subject to the exception that "[i]f two forces are actively

3    operating, . . . and each of itself is sufficient to bring about harm to another, the actor's [conduct]

4    may be found to be a substantial factor in bringing it about." *Id.* § 432(2).

5          "The substantial factor test generally produces the same results as does the 'but for' rule of

6    causation which states that a defendant's conduct is a cause of the injury if the injury would not

7    have occurred 'but for' that conduct." *Bank of N.Y.*, 523 F.3d at 909 (quoting *Rutherford v.*

8    *Owens-Illinois, Inc.*, 16 Cal. 4th 953, 969 (1997)).  In order to be a substantial factor, the

9    defendant's conduct must be part of the "factual chain of causation" responsible for the plaintiff's

10   injury.  *Id.* at 910.  "If the conduct which is claimed to have caused the injury had nothing at all to

11   do with the injuries, it could not be said that the conduct was a factor, let alone a substantial factor,

12   in the production of the injuries." *Mitchell*, 54 Cal. 3d at 1052.

13         For the reasons discussed below, the Court need not resolve whether use of the substantial

14   factor test would change the Court's causation analysis because the Court concludes that

15   individualized issues will predominate two preliminary inquiries that precede any causation

16   analysis for either the original class or the proposed narrower class.  Specifically, the Court finds

17   that individualized inquiries will predominate the questions of whether original class members had

18   a contractual right to receive text messages and whether those contractual rights were breached.

19   The Court then finds that individualized inquiries will predominate the question of whether the

20   contractual rights of members of the proposed narrower class were actually breached.

21         **2.  Predominance analysis of Plaintiff's original class**

22         The Court can certify a Rule 23(b)(3) class only if the Court finds that "questions of law or

23   fact common to class members predominate over any questions affecting only individual

24   members, and that a class action is superior to other available methods for fairly and efficiently

25   adjudicating the controversy." Fed. R. Civ. P. 23(b)(3).  The predominance inquiry of Rule

26   23(b)(3) "tests whether proposed classes are sufficiently cohesive to warrant adjudication by

27   representation." *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 623 (1997).  Accordingly, the

28

United States District Court
Northern District of California

6

Case No. 14-CV-02269-LHK
ORDER DENYING LEAVE TO FILE MOTION FOR RECONSIDERATION

predominance analysis "focuses on the relationship between the common and individual issues in the case." *Wang v. Chinese Daily News, Inc.*, 737 F.3d 538, 545 (9th Cir. 2013).

The Court's predominance analysis "entails identifying the substantive issues that will control the outcome, assessing which issues will predominate, and then determining whether the issues are common to the class, a process that ultimately prevents the class from degenerating into a series of individual trials." *Gene & Gene LLC v. Biopay LLC*, 541 F.3d 318, 326 (5th Cir. 2008); *see also In re New Motor Vehicles Canadian Exp. Antitrust Litig.*, 522 F.3d 6, 20 (1st Cir. 2008) ("Under the predominance inquiry, a district court must formulate some prediction as to how specific issues will play out in order to determine whether common or individual issues predominate in a given case."); *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1022 (9th Cir. 1998) (finding predominance "[w]hen common questions present a significant aspect of the case and they can be resolved for all members of the class in a single adjudication"). To meet the predominance requirement, "common questions must be a significant aspect of the case that can be resolved for all members of the class in a single adjudication." *Berger v. Home Depot USA, Inc.*, 741 F.3d 1061, 1068 (9th Cir. 2014) (alterations omitted). The Court's inquiry is not whether common questions predominate with respect to individual elements or affirmative defenses; rather, the inquiry is a holistic one, in which the Court considers whether overall, considering the issues to be litigated, common issues will predominate. *Amgen Inc. v. Conn. Retirement Plans & Trust Funds*, 133 S. Ct. 1184, 1196 (2013).

In support of her motion for class certification, Plaintiff identified the following substantive issues as raising common, predominating questions for the original class: (1) class members' contractual right to receive text messages; (2) Defendant's knowledge of the contractual relationship between class members and their wireless service providers; (3) Defendant's intent; (4) and the factual question of whether Defendant's iMessage system "actually disrupts the delivery of text messages sent from iPhones to non-Apple phones of former iPhone users." ECF No. 57 at 21.

In denying the motion for class certification, the Court first concluded that "there are

Case No. 14-CV-02269-LHK
ORDER DENYING LEAVE TO FILE MOTION FOR RECONSIDERATION

United States District Court
Northern District of California

1   material variations in the proposed class members' wireless service agreements." *See Moore v.*

2   *Apple*, --- F.R.D. ---, 2015 WL 4638293, at *12 (N.D. Cal. Aug. 4, 2015).  In particular, the

3   original class definition "includes individuals who did not have any contractual right to receive

4   text messages." *Id.* at *10.  Additionally, the Court found that among those class members who

5   did have a contractual right to receive text messages, there are "variations in the wireless services

6   agreements that govern the receipt of text messages." *Id.* at *11.  These variations include

7   whether class members receive an unlimited number of text messages or have a cap on the number

8   of text messages they can receive per month; whether class members pay per text; and whether

9   class members may block text messages from certain senders.  *Id.*  As a result of these individual

10  variations in class members' contracts, the Court concluded that individualized issues relating to

11  individual class members' wireless service agreements would predominate.  *Id.* at *12.

12       The Court then addressed whether class members' service agreements were breached

13  because of missed text messages caused by Defendant.  *Id.*  The Court ultimately concluded that

14  individualized issues would also predominate these questions of breach and causation.  *Id.* at *14.

15  Based on the Court's conclusions that individualized inquiries would be necessary to determine

16  "which class members suffered interference with their wireless service agreements and whether

17  that interference was caused by iMessage," the Court held that Plaintiff had not met her burden of

18  showing the issues common to the class would predominate.  *Id.*  Accordingly, the Court denied

19  Plaintiff's motion for class certification.

20       In the Motion for Leave, Plaintiff argues that under the substantial factor causation test,

21  common issues predominate the inquiry into whether iMessage caused class members to miss text

22  messages.  However, the Court will only reach the issue of causation for a given class member if

23  that class member had a contractual right to receive text messages that was breached by the failure

24  to receive text messages.

25       The Court concludes that under the original class definition, individualized issues will

26  predominate the Court's preliminary inquiries into whether class members had a contractual right

27  to receive text messages and whether that contractual right was breached.  The Court must resolve

28  
8

Case No. 14-CV-02269-LHK
ORDER DENYING LEAVE TO FILE MOTION FOR RECONSIDERATION

these individualized preliminary questions prior to conducting any causation inquiry.

First, the causation standard does not effect this Court's conclusion that the original class definition "includes individuals who did not have any contractual right to receive text messages" and that there are "variations in the wireless service agreements that govern the receipt of text messages." *Id.* at *10-11. For example, some wireless service agreements involve a fixed price for unlimited service, others provide service "up to an agreed maximum of service consumed," and still others provide for separate billing with respect to each incoming or outgoing text message. *See* Dwyer Decl. ¶ 22. These variations are relevant, as restrictions in a wireless service contract could mean that an individual did not receive text messages because he or she had exceeded the maximum number of paid for text messages, or had affirmatively opted not to receive text messages by declining to pay for text messaging services. *See* ECF No. 79 at 10. These individuals would not have a contractual right to receive additional text messages. Because of the variations in wireless service contracts, individualized issues will govern the Court's inquiry into whether the class members under the original class definition had a contractual right to receive text messages.

Similarly, the Court will have to assess whether each class members' service agreement was breached. The Court must consider the specific terms of an individual class member's wireless service agreement to determine whether that agreement was breached because an individual who did not have a contractual right to receive text messages cannot have suffered a breach of contract for failure to receive text messages.

Furthermore, class members may have affirmatively opted not to receive text messages by "blocking" messages from a particular sender. *See* Katriel Decl. Ex. 36 (T-Mobile webpage referencing "Message Blocking"). If an individual blocked all messages from a particular sender, there can be no breach if the individual does not receive text messages from that sender. Whether class members had a contractual right to receive text messages and had not opted out of receiving certain messages must be assessed on an individualized basis. Thus, individualized issues will also predominate the Court's inquiry into whether class members' contractual rights were

9

United States District Court
Northern District of California

1    breached.

2        Where, as here, determining the fact of injury would require examining each individual

3    class member's contract, other courts have also concluded that "legal and factual questions

4    common to the class, significant as they may be," are insufficient to overcome the individualized

5    inquiries necessary to determine liability. *Gibson v. Credit Suisse AG*, No. CV 10-1-EJL-REB,

6    2013 WL 5375648, at \*13 (D. Idaho Aug. 16, 2013); *see also Martinez v. Welk Grp., Inc.*, No. 09-

7    cv-2883-AJB, 2012 WL 2888536, at \*4 (S.D. Cal. July 13, 2012) (predominance requirement not

8    satisfied where "not all [proposed class members] have the same contract").  Indeed, in this case,

9    the individualized inquiries on the preliminary questions of class members' contractual right to

10   receive messages and breach of that right affect three of the issues that Plaintiff puts forward as

11   presenting common questions: (1) class members' contractual right to receive text messages; (2)

12   Defendant's knowledge of the contractual relationship between class members and their wireless

13   service providers; and (3) Defendant's intent.  *See* ECF No. 57 at 21 (Plaintiff's list of four issues

14   presenting common questions).  Class members' contractual right to receive text messages is one

15   of the preliminary questions the Court must resolve that will require individualized inquiries.

16   Defendant's knowledge of class members' contractual relationships with wireless service

17   providers and Defendant's intent to disrupt those contractual relationships both depend on

18   knowing what contractual rights the class members had.  Thus, individualized inquiries will

19   predominate the second and third questions as well.

20       Furthermore, the need to analyze each class members' service agreement individually prior

21   to conducting any causation inquiry will cause trial to "degenerat[e] into a series of individual

22   trials" on issues material to any showing of liability.  *See Gene & Gene LLC*, 541 F.3d at 326.

23   Notwithstanding Plaintiff's argument that the Court applied the incorrect causation standard, the

24   Court concludes that judicial economy would not be served by class treatment in this case.  *See In*

25   *re Wells Fargo Home Mortgage Overtime Pay Litig.*, 571 F.3d 953, 958 (9th Cir. 2009) ("Whether

26   judicial economy will be served in a particular case turns on close scrutiny of the relationship

27   between the common and individual issues.").

28

Case No. 14-CV-02269-LHK
ORDER DENYING LEAVE TO FILE MOTION FOR RECONSIDERATION

United States District Court
Northern District of California

Therefore, because individualized issues based on the preliminary questions of contractual right and breach will predominate the first three questions identified by Plaintiff, the original class is not certifiable under Rule 23(b).  The Court now turns to analyze predominance for Plaintiff's proposed narrower class.

## B. Predominance analysis of Plaintiff's proposed narrower class of unlimited text message subscribers

Plaintiff additionally argues that the Court erred by denying class certification after concluding that the original class definition was overbroad.  ECF No. 128 at 4-7.  Plaintiff contends that after concluding that the original class definition was overbroad, the Court should reconsider its denial of class certification and certify Plaintiff's proposed narrower class.  Specifically, Plaintiff argues that the Court should certify "a narrower class limited to comprise only those putative members of Moore's initially proposed class who, like Moore herself, were parties to an unlimited text messaging wireless contract at the time of their switch from an iPhone to a non-Apple device."  ECF No. 128 at 6.  According to Plaintiff, this proposed narrower class satisfies all of the requirements for class certification, so the Court on reconsideration should certify the proposed narrower class, even though Plaintiff did not propose this class in Plaintiff's motion for class certification.  The Court declines to certify Plaintiff's proposed narrower class on reconsideration.

First, the Court is not obligated to certify a narrower class when the class definition advanced in the motion for class certification cannot be certified due to overbreadth.  The Court may deny certification of an overbroad class, even if a narrower class may potentially be certifiable.  *See, e.g.*, *Forrand v. Fed. Express Corp.*, No. CV 08-1360 DSF (PJWx), 2013 WL 1793951, at *6 (C.D. Cal. April 25, 2013) (denying class certification for overbreadth and declining to consider a narrower class because "[w]hile it is possible that a narrower proposed class could be certified as to the Unpaid On-the-Clock Class, that is not what [the plaintiff] proposes."), *aff'd sub nom. Green v. Fed. Express Corp.*, 614 Fed. App'x 905 (9th Cir. 2015).

As Plaintiff conceded at the hearing on October 15, the cases cited by Plaintiff do not stand

11

Case No. 14-CV-02269-LHK
ORDER DENYING LEAVE TO FILE MOTION FOR RECONSIDERATION

United States District Court
Northern District of California

1   for the proposition that the Court must *sua sponte* certify a narrower class when the proposed class

2   is overbroad.  *Kohen v. Pacific Investment Management Company LLC*, 571 F.3d 672, 678 (7th

3   Cir. 2009), held that the class in question was *not* overbroad and affirmed class certification.

4           In *Mazza v. American Honda Motor Co., Inc.*, 666 F.3d 581, 596 (9th Cir. 2012), the Ninth

5   Circuit vacated the district court's class certification and explicitly provided "no opinion" as to

6   whether a narrower class could be certified on remand.  Notably, the court in *Mazza* did not

7   require the district court on remand to consider narrowing the class definition on its own.  *See id.*

8           In *Stearns v. Ticketmaster Corp.*, 655 F.3d 1013, 1025 (9th Cir. 2011), *abrogated on other

9   grounds by Comcast Corp. v. Behrend*, 133 S. Ct. 1426 (2013), the Ninth Circuit reversed the

10  dismissal of a complaint that the district court had found to be duplicative of a separate action

11  because the new complaint proposed a narrower class definition than the first action's proposed

12  class, which was rejected as overbroad.  The Ninth Circuit expressed "no opinion on whether,

13  upon further consideration by the district court, a class can properly be certified," and did not

14  require the district court to inquire into further narrowing the class on its own.  *See id.*

15          Moreover, the Court concludes that the proposed narrower class would not be certifiable.

16  The Court can certify a Rule 23(b)(3) class only if the Court finds that "questions of law or fact

17  common to class members predominate over any questions affecting only individual members,

18  and that a class action is superior to other available methods for fairly and efficiently adjudicating

19  the controversy."  Fed. R. Civ. P. 23(b)(3).

20          In Apple's opposition to Plaintiff's Motion for Leave, Apple argues that, just as the Court

21  has found that individual inquiries would predominate a trial following certification of Plaintiff's

22  original class, individual inquiries also would predominate a trial following certification of

23  Plaintiff's proposed narrower class.  ECF No. 131 at 2.  For example, Apple argues that wireless

24  service providers may have differences in what services are included in an "unlimited text

25  messaging" contract.  *Id.*  Apple further contends that the Court will need to determine on an

26  individual basis whether each class member had any other contractual terms or services, such as

27  message blocking, that would affect whether each class member had a contractual right to receive

28

Case No. 14-CV-02269-LHK
ORDER DENYING LEAVE TO FILE MOTION FOR RECONSIDERATION

1   the text messages allegedly intercepted by iMessage.  *Id.*  The Court previously found that some

2   wireless service customers had affirmatively opted not to receive text messages by "blocking" a

3   particular sender.  *See Moore*, 2015 WL 4638293, at *11.  Plaintiff presents no evidence that her

4   proposed narrower class would eliminate these variations, which require individual inquiries.

5         Consequently, Plaintiff's proposed narrower class will require many of the same

6   individualized inquiries on the preliminary questions of class members' contractual rights and

7   breach of those rights as Plaintiff's original class.  If a class member within Plaintiff's proposed

8   narrower class blocked the text messages of a particular sender, the class member has no

9   contractual right to receive the blocked text messages.  Therefore, the failure to receive those

10   blocked text messages would not constitute a breach of the class member's contract,

11   notwithstanding any interaction iMessage may have had with the blocked text messages.  Because

12   actual breach of a contract is an essential element of Plaintiff's asserted cause of action, the Court

13   must undertake this analysis for each class member to determine Apple's culpability.  *See*

14   *Quelimane*, 19 Cal. 4th at 55 (the elements of tortious interference with contractual relations in

15   California are "(1) a valid contract between plaintiff and a third party; (2) defendant's knowledge

16   of this contract; (3) defendant's intentional acts designed to induce a breach or disruption of the

17   contractual relationship; (4) actual breach or disruption of the contractual relationship; and (5)

18   resulting damage").  Thus, even under the proposed narrower class definition, individualized

19   inquiries into whether the class members had a contractual right to receive the missed text

20   messages and whether the class members' contracts were breached will predominate at trial.

21         The Court acknowledges that under Plaintiff's proposed narrower class definition,

22   common issues may predominate the inquiry into whether class members had a contractual right

23   to receive text messages generally.  However, this does not resolve the question of whether the

24   class members had a right to receive the specific text messages that were not received.  Apple

25   tortiously interfered with a class member's wireless service contract only if Apple caused an actual

26   breach of that contract.  *See Quelimane*, 19 Cal. 4th at 55 ("actual breach or disruption of the

27   contractual relationship" is a necessary element of tortious interference with contract in

28

Case No. 14-CV-02269-LHK
ORDER DENYING LEAVE TO FILE MOTION FOR RECONSIDERATION

1   California).  Resolving whether there was an actual breach of a class member's contract requires

2   individualized inquiries into whether the class member had a right to receive the missed text

3   messages, therefore preventing the Court from certifying the class under Rule 23(b)(3).

4        Because Plaintiff's proposed narrower class is not certifiable, the Court will not grant

5   Plaintiff leave to file a motion for reconsider of the Court's order denying class certification.

6   **II.      CONCLUSION**

7        For the foregoing reasons, the Court DENIES Plaintiff's motion for leave to file a motion

8   for reconsideration of the Court's order denying class certification.

9   **IT IS SO ORDERED.**

10

11  Dated: November 20, 2015

12  _____

13  LUCY H. KOH
    United States District Judge

14

15

United States District Court
Northern District of California

Case No. 14-CV-02269-LHK
ORDER DENYING LEAVE TO FILE MOTION FOR RECONSIDERATION